482 So.2d 729 (1985)
Ervin J. RICHARD, et ux.
v.
Floyd J. BROUSSARD, et ux.
No. CA 84 1172.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Rehearing Denied February 26, 1986.
*730 Kim P. Stansbury, Morgan City, for plaintiffs.
Risley C. Triche, Triche, Sternfels & Nail, Napoleonville, for defendants.
*731 Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
LANIER, Judge.
This is a suit in contract alleging breach of a lease agreement by the lessees and seeking unpaid rents, damages and a contractual attorney fee. The trial court rendered judgment in favor of the lessors against the lessees for monthly rental of $3,250 per month for 14 months ($45,500) and damages of $772.05, for a total award of $46,272.05. A contractual attorney fee of 25% ($11,568.01) was assessed and legal interest was granted from date of judicial demand. The lessees took this suspensive appeal.

FACTS
In October of 1981, Ervin J. Richard and his wife, Odelia, owned and operated a business in the Bayou Vista community of St. Mary Parish, Louisiana. The business was located on the first floor of a two-story building located on the Richard premises. The Richards lived on the second floor.
In October of 1981, Floyd J. Broussard and his wife, Diane, contacted the Richards about buying the Richard business. The parties entered into a written lease-purchase agreement in which the Broussards leased the business premises from the Richards for $3,250 per month. The lease declares that its primary term is from November 1, 1981, until September 30, 1983, but the evidence shows the Broussards began operating the business in October of 1981. The Broussards were granted an option to purchase the Richard property for $275,000, which option could be exercised any time during the term of the lease.
The Richards retired from business and relied on the Broussards' monthly rental payments for their principal source of income. The Broussards paid rent and operated the business through July of 1982. The business was not a success and the Broussards closed the business and vacated the leased premises in July of 1982 without notice to the Richards. No rent was paid thereafter.
After the Broussards left the premises, the Richards attempted to find occupants for the premises from August to October of 1982. The Richards spent $583.70 for advertisements in area newspapers for this purpose. These efforts were unsuccessful.
In October of 1982, the Richards reoccupied a portion of the first floor of the premises and attempted to reestablish the business. These efforts ultimately failed. The Richards spent $188.39 to repair two icemakers, a freezer and a vacuum cleaner belonging to the business and which had been left in an unrepaired condition by the Broussards. The Richards made improvements to the premises to attract tenants. This suit was filed on December 17, 1982. The primary term of the lease ended on September 30, 1983. The Richards finally obtained tenants for the business premises on February 1, 1984.

TERMINATION OF LEASE
The Broussards contend the trial court erred by awarding unpaid monthly rentals until September 30, 1983, because the Richards terminated the lease in October of 1982 when they reoccupied the leased premises and attempted to reestablish the business.
The courts are bound to give legal effect to contracts according to the true intent of the parties. This intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. Carter's Insurance Agency, Inc. v. Franklin, 428 So.2d 808 (La.App. 1st Cir.1983).
Paragraph XXIII of the lease-purchase agreement provides as follows:
Upon the happening of any event of dafault [sic] LESSORS shall have the right at the option of LESSORS to exercise any one of the following remedies in addition to appropriate remedies which may otherwise be provided by law, as follows:
A. There shall, at the election of LESSORS, become forthwith due, payable and exigible so much of the whole rent *732 for the whole term of this lease as shall have been ascertained to be payable in definite and fixed amounts but which shall not have matured, at the time such election is exercised, and the LESSORS may proceed by attachment, suit or otherwise, to collect the rents so becoming due, payable and exigible in the same manner as though by the terms of this lease such rents were payable in advance; and the LESSOR may thereafter from time to time proceed, by attachment, suit or otherwise, to collect any of the rents thereafter from time to time becoming due and payable under any of the provisions of this lease which LESSEES shall fail to pay at maturity, such rents thereafter becoming due and payable as aforesaid, and the covenant of LESSEES to pay the same, being severable at the option of LESSORS from the rents which are accelerable and exigible under the foregoing terms of this paragraph, and from the covenant of LESSEES to pay such rents.
B. LESSORS shall have the right, at its election, to annul this lease and immediately to re-enter upon and take possession of said premises; and such re-entry shall not bar recovery of rent then accrued or damages for breach of covenant, nor shall the receipt of rent after condition broken be deemed a waiver of forfeiture.
C. If the demised premises shall be deserted or abandoned during the term of this lease or should the LESSEES begin to remove personal property or goods to the prejudice of the LESSORS liens, or if the LESSEES shall be evicted from said premises by a summary procedings, or otherwise, or upon the happening of any event or default, LESSORS may, at its election re-enter the same by force or otherwise, without being liable for prosecution therefore, and may relet said premises at any time as agent of LESSEES, applying any monies collected first, to costs, fees and expense of collection, second, to the expense of obtaining possession and redecoration and/or altering the premises, third, to the payment of the rent and all other sum owing and to beocme [sic] owing LESSORS, and paying any surplus thereof to the LESSEES, and such re-entry and reletting shall not discharge LESSEES from liability for rent nor from any other covenant of this lease by it or to be kept and performed.

In the event of default on the part of LESSEES and the employment of an attorney for the collection of any amount due hereunder, or for the institution of any suit for possession of said property, for service incident to the breach of any other condition of this lease by LESSEES, or on account of bankruptcy proceedings by or against LESSEES, or legal process being issued against the furniture and effects of LESSEES, located upon the Leased Premises, or the leasehold interest of LESSEES, LESSEES agrees [sic] to pay and shall be taxed with attorney's fees, at a rate of twenty-five (25%) per cent, which fee shall be a part of the debt evidenced and secured by this lease.
This provision "C" as set forth above shall not preclude LESSEES from vacating the premises provided however, that LESSEES shall not be released from all terms and conditions as set forth herein. [Emphasis added].
In his excellent reasons for judgment, the trial judge disposed of the contention raised in this assignment of error as follows:
Having answered the first question in the affirmative, the Court must next determine whether the plaintiff/lessor's acts of re-entering the leased premises after the abandonment, renovating the building, and gradually reestablishing a previously operated business constituted a cancellation of the lease. The defendant argues that plaintiff's actions disturbed his peaceable possession of the premises, thus evidencing an intent on the part of plaintiff to terminate the lease. Plaintiff, on the other hand, takes the position that these activities merely *733 amounted to a good faith effort to mitigate his damages and that he never intended to cancel the lease.
In order to escape liability under the lease, the defendant/lessee must prove by a preponderance of the evidence that the parties mutually agreed to prematurely terminate the lease and to discharge each other from all obligations under the lease. Caracci v. Conners, 144 So.2d 470 (La.App. 4th Cir.1962). Although no cases were found which are exactly on point, the Court notes several cases which deal with the issue of what type of activities the lessor can engage in on abandoned leased premises without evidencing an intent to cancel the lease.
In Sliman v. Fish [177 La. 38]. 147 [So.] So.2d 493 (La.1933), our Supreme Court held that where the lessee abandons the premises, the lessor may take charge of them for the purpose of preserving the property and procuring new tenants on behalf of the lessee and that this action cannot be considered as amounting to a cancellation of the lease or an impairment of the lessor's recourse against the lessee.
The Fourth Circuit in Bunel of New Orleans, Inc. v. Cigali, 348 So.2d 993 (La.App. 4th Cir.1977) held that the lessor was entitled to rent from the time lessee vacated the leased premises to the time the lessor was able to re-let the premises, including the period of time in which the lessor possessed the property "to prepare the property to lease again in order to minimize his damages from lessee's breach of the lease by non-payment of the rent".

Shaw v. Knight [16 La.App. 474], 134 So. 286 (La.App. 2n [2d] Cir.1931) holds that the lessor may take possession of the leased premises after the lessee's abandonment for protection and conservation purposes without precluding recovery of the unpaid rent.
The lessor in the present case made every effort to re-let the leased premises, although he was not under any obligation to do so. Not only did he advertise the availability of the property for sub-lease, but he spent time and money making improvements to the property in order to make it more attractive to potential sub-lessees. The defendant/lessee did nothing to help plaintiff in these endeavors. After his attempts to find a new tenant failed plaintiff, in a final effort to mitigate damages, began to reestablish a business on the premises in hopes of making a profit. These efforts, also, failed.
The lease between the parties does not specifically state that the lessor may reopen a business on the premises should an abandonment occur and Louisiana jurisprudence has not spoken directly as to whether or not such an action constitutes a canellation [sic] of the lease. It is clear, however, that both the lease and Louisiana jurisprudence allow the lessor to enter the premises for the purpose of preserving the property and enhancing its leasing value without impairing his rights against the lessee. The Court is of the opinion that plaintiff reentered the premises, made renovations, and subsequently began to reestablish a previously operated business therein strictly for the purpose of preserving the premises, enhancing its leasing value and procuring a new tenant. These efforts to minimize his damages are to be commended. Plaintiff did not, at any time, express an intent to cancel the lease and discharge the lessee. He did not ask the defendant to vacate the premises, nor did he ever refuse the defendant access to the property.
We adopt these reasons as our own.
This assignment of error is without merit.

ADVERTISEMENT AND REPAIR COSTS
The Broussards contend the award of $772.05 for the costs of advertising for tenants and repairing appurtenances on the premises are not costs incurred for conservation, are not contemplated by the lease-purchase *734 contract and amount to unjustified enrichment.
Paragraph VI of the contract provides the leased premises and its appurtenances are delivered to the lessees in good order and requires the lessees to maintain them at their sole cost and expense. Paragraph VI then concludes with the following:
If LESSEES fails to or neglects to repair property as required herein and to the reasonable satisfaction of LESSORS as soon as reasonably possible, LESSORS may make such repairs without liability to LESSEES for any loss or damage that may accrue to LESSEES merchandise, fixtures or other property or to LESSEES business by reason thereof, and upon completion thereof LESSEE shall pay LESSORS cost for making such repairs plus twenty-five (25%) per cent for overhead, upon presentation of a bill to LESSEES.
The Richards are entitled to recover the $188.39 spent to repair the two icemakers, freezer and vacuum cleaner.
Paragraph XXIII(C) of the lease-purchase agreement gives the Richards upon any default by the Broussards the right to take possession of the leased premises and relet them. The revenues obtained from the releasing are dedicated to reducing the damages owed by the Broussards for the default. As previously indicated, the Richards had an obligation to mitigate the damages. Abrams v. Dinh, 471 So.2d 994 (La.App.1st Cir.1985) and the cases cited therein. Cf. La.C.C. art. 2002 enacted by Acts 1984, No. 331, effective January 1, 1985. Advertising to locate a tenant for the vacated premises was a reasonable and prudent effort at such mitigation. The expense of such advertising is predictable damage flowing from a breach of this contract and is recoverable. La.C.C. art. 1934, amended and reenacted by Acts 1984, No. 331 to La.C.C. arts. 1995, 1996, 1997, 1998, 1999, 2002, 2003, 2009 and 2011.
This assignment of error is without merit.

EXCESSIVE ATTORNEY FEE
The Broussards contend the 25% attorney fee awarded by the trial court is excessive.
The prevailing party in litigation is not entitled to the award of an attorney fee unless it is authorized by statute or contract. Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978). Parties to a contract may lawfully obligate themselves for the payment of an attorney fee. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970). Attorney fees are subject to review and control by the courts. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). Although a written agreement may provide for a specified attorney fee, the courts may inquire into the reasonableness of the fee. Graham v. Sequoya Corporation, 478 So.2d 1223 (La. 1985); Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). While it is true that a court is required to allow the introduction of "all admissible evidence" when an attorney fee is claimed (La.R.S. 13:3738), nevertheless, proof of the value of an attorney's services is not necessary where the services are evident from the record and/or are rendered under the supervision of the court. Lokey v. Dixie Buick, Inc., 400 So.2d 322 (La.App. 4th Cir.1981); Babineaux v. Black, 396 So.2d 584 (La.App. 3rd Cir.1981); State, Department of Highways v. Terrebonne, 349 So.2d 936 (La.App. 1st Cir.1977), writ denied, 351 So.2d 166 (La. 1977). A trial court judge has much discretion in fixing an attorney fee, and his award will not be modified on appeal absent a showing of an abuse of that discretion. Aetna Finance Company of Baton Rouge v. Perkins, 448 So.2d 121 (La.App. 1st Cir.1984).
Paragraph XXIII of the lease-purchase contract provides for a 25% attorney fee. On a judgment for $46,272.05, such a fee would be $11,568.01. The record does not reflect that an evidentiary *735 hearing was held to determine the reasonableness of the fee. The record only reflects the following work done by counsel for the Richards:
(1) December 17, 1982filed petition previously prepared;
(2) February 22, 1983filed motion to set for trial;
(3) July 28, 1983filed motion to reschedule trial date;
(4) October 11, 1983filed motion to continue trial date;
(5) December 29, 1983filed motion to continue trial date;
(6) February 3, 1984filed a seven page pretrial memorandum;
(7) February 13, 1984filed a motion to reset the trial date;
(8) April 19, 1984trial of case; and
(9) April 30, 1984filed a seven page post-trial memorandum.
This evidence of record is not sufficient to justify a fee of $11,568.01. However, it is apparent that all available evidence to justify the fee has not been placed of record. In such a situation, this court has authority, in the interest of justice, to remand for an evidentiary hearing. La.C.C.P. art. 2164; Kliebert v. Arceneaux Air Conditioning, Inc., 439 So.2d 486 (La.App. 1st Cir.1983). At the evidentiary hearing, the trial court shall fix a reasonable attorney fee after considering the factors set forth in DR 2-106 of the Code of Professional Responsibility.

DECREE
For the foregoing reasons, the 25% attorney fee award is reversed, and this portion of this action is remanded to the trial court for an evidentiary hearing and fixing of a reasonable fee. In all other respects, the judgment of the trial court is affirmed. The Broussards are cast for the cost of this appeal.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.