554 So.2d 1347 (1989)
GULF WIDE TOWING, INC.
v.
F.E. WRIGHT (U.K.) LIMITED, et al.
No. CA 88 1747.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
*1349 B.J. Rawls, Morgan City, John Haas Weinstein, Opelousas, for plaintiff-appellee.
Robert B. Acomb, Jr., and Glenn G. Goodier, New Orleans, for Grand Union Ins. Co., Ltd.
Before EDWARDS, LANIER and FOIL, JJ.
LANIER, Judge.
This action is a suit in contract for recovery of insurance proceeds allegedly due as a result of the sinking of the towboat, M/V MISS JULIE MAC, in the Gulf of Mexico. Suit was filed by Gulf Wide Towing, Inc. (Gulf Wide), owner of the M/V MISS JULIE MAC, against F.E. Wright (U.K.) Limited (F.E. Wright), Kasko & Lager International, LTD. (Kasko & Lager), Grand Union Insurance Co., LTD. (Grand Union), Great Intercontinental Insurance Company (Great Intercontinental), Associated Insurance Managers, Inc. (AIM) and International Marine & Reinsurance Inc. (IMR). Guaranty Bank & Trust of Morgan City (Guaranty Bank) intervened seeking to recover the insurance proceeds as the named loss payee under the insurance policy. The defendants other than Grand Union and Great Intercontinental settled their portions of the claim prior to trial. The trial court found as fact that Grand Union and Great Intercontinental provided twenty-five percent (25%) and fifteen percent (15%), respectively, of the $1,280,000 in hull insurance coverage on the M/V MISS JULIE MAC and that they were arbitrary and capricious in refusing Gulf Wide's claim. The trial court rendered judgment against Grand Union for $320,000, together with statutory penalties of twelve percent (12%) of the amount due and an attorney fee of thirty-three and one-third percent (331/3%) on the entire amount awarded. The trial court rendered judgment against Great Intercontinental for $192,000, together with penalties of twelve percent (12%) and attorney fees of thirty-three and one-third percent (331/3%) on the entire amount awarded, subject to a credit of $116,409.43 already paid. The trial court also recognized the intervention of Guaranty Bank. Grand Union took this devolutive appeal.

FACTS
The M/V MISS JULIE MAC was a towboat owned by Gulf Wide. In 1984, Mike Smith, president and sole shareholder of Gulf Wide, contacted Vicky Babineaux with AIM in Morgan City, Louisiana, in an effort to secure marine insurance to cover the M/V MISS JULIE MAC and other vessels owned by Gulf Wide. Babineaux, in an effort to secure this coverage, contacted IMR in Cocoa Beach, Florida, which in turn contacted Kasko & Lager in London, England. Kasko & Lager eventually secured several London underwriters to agree to insure the vessels. As a result, Kasko & Lager issued a cover note to IMR which stated the types and amounts of coverage on the M/V MISS JULIE MAC and other vessels owned by Gulf Wide. This cover note listed the London underwriters and the percentage of coverage each had bound itself to provide. Attached hereto as Appendix A is the Kasko & Lager cover note. IMR issued a similar cover note to AIM who eventually issued a policy based on this cover note to Gulf Wide. All of the documents indicated that Grand Union, a London underwriter, provided twenty-five percent (25%) of the $1,280,000 in hull coverage on the M/V MISS JULIE MAC. *1350 Gulf Wide paid a premium of $159,449.06 to Kasko & Lager for the insurance coverage on the M/V MISS JULIE MAC and other vessels owned by it."
On June 9, 1984, the M/V MISS JULIE MAC sank in the Gulf of Mexico while being towed back to Morgan City for fire damage repairs. Gulf Wide notified AIM of the loss, seeking to recover the hull insurance proceeds on the vessel. Prior to trial, Gulf Wide received sixty percent (60%) of the hull insurance proceeds from various London underwriters. Grand Union refused to pay Gulf Wide's claim for twenty-five percent (25%) of the hull insurance proceeds and asserted that it had not bound itself to provide this coverage.

PERSONAL JURISDICTION OVER GRAND UNION

(Assignment of error number 1)
Grand Union contends that the trial court erred in finding that it had personal jurisdiction over it. Grand Union argues that personal jurisdiction over foreign or alien insurers is controlled by the Louisiana Insurance Code, specifically La.R.S. 22:1249 and 22:1253.
The Louisiana Supreme Court in First Guaranty Bank of Hammond v. Attorneys Liability Assurance Society, LTD., 515 So.2d 1080, 1081-1083 (La.1987) stated the following:
In order for a Louisiana court to exercise personal jurisdiction over a nonresident defendant, there must be a state statute that authorizes the court to do so and the exercise of personal jurisdiction over the particular nonresident defendant must not offend the "traditional notions of fair play and substantial justice" embodied in the due process clause of the fourteenth amendment....
A brief history of Louisiana's long-arm statute is necessary to resolve the issue before us. When Louisiana's long-arm statute, La.R.S. 13:3201, was first enacted in 1964, it provided:
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
(a) transacting any business in this state;
(b) contracting to supply services or things in this state;
(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; or
(e) having an interest in, using, or possessing a real right or immovable property in this state.
One of the comments of the Louisiana Law Institute in 1964 stated in part:
It was not felt necessary to extend this section to insurance. Under R.S. 22:1253(A), there is an implied appointment of the Secretary of State as the agent for the service of process on any foreign or alien insurer which is not qualified to do business in Louisiana, but which transacts business in this state....
Prior to the 1987 amendment, the long-arm statute had been amended several times to add other activities to the list, but nothing was ever added specifically to cover nonresident insurers. Even though La.R.S. 22:1253(D) provides that "[n]othing in this Section contained shall limit or abridge the right to serve any process, notice or demand upon any insurer in any other manner now or hereafter permitted by law," there was arguably no other statute besides 1253(A) that provided for jurisdiction over ALAS until the 1987 amendment to the long-arm statute.
In 1987, the Louisiana Legislature amended La.R.S. 13:3201 (the long-arm statute) by adding the following subsection:

*1351 B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
The addition of Subsection B makes other statutes (like La.R.S. 22:1253(A)) that assert personal jurisdiction over nonresident defendants unnecessary. "Now, under the express wording of the present Louisiana Long-arm Statute, the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements."... If personal jurisdiction over a particular nonresident defendant meets the constitutional requirements of due process, then the assertion of that jurisdiction by a Louisiana court is authorized under the long-arm statute. Because the long-arm statute pertains to jurisdiction and procedure, it may be applied retroactively.
. . . . .
Therefore, the narrow issue before this court is whether the assertion of personal jurisdiction over ALAS by a Louisiana court would offend "traditional notions of fair play and substantial justice" embodied in the due process clause of the fourteenth amendment.... Accordingly, it is not necessary to review the court of appeal's determination that ALAS is not "transacting an insurance business in this state" within the meaning of La.R.S. 22:1249. It is certainly possible for a nonresident insurer to have sufficient "minimum contacts" with Louisiana for purposes of personal jurisdiction and yet not be "transacting the business of insurance in this state" as defined by the Insurance Code.
(Emphasis added; footnotes omitted; citations omitted)
Thus, the only issue left for us to decide is whether or not the assertion of jurisdiction over Grand Union meets the constitutional requirements of due process.
In Fryar v. Westside Habilitation Center, 479 So.2d 883, 888 (La.1985), the Louisiana Supreme Court set out the requirements of due process for jurisdiction over a person as follows:
The basic due process requirement for jurisdiction over a person is minimum contacts with the forum state.... An individual is not subject to the jurisdiction of a forum with which he has established no "contacts, ties or relations" [sic] ... The contacts with the forum state cannot be "isolated", "fortuitous", or "attenuated". There must be a substantial connection between the defendant's activities and the forum state, but physical entry into the forum state is not essential.... Plaintiff's residence is not irrelevant to the inquiry, because defendant's relationship with plaintiff may enhance defendant's contacts with the forum.
. . . . .
A person must have fair warning that an activity may subject him to foreign jurisdiction.... This allows a potential defendant some assurance as to where he will be liable to suit.... The requirement of fair warning is satisfied when a defendant has purposefully directed his activities at a resident of the forum, and the litigation results from foreseeable injuries arising out of or relating to those activities....

A nonresident party to a contract consummated in the forum state is subject to the forum state's in personam jurisdiction on causes of action arising out of the transaction....
When minimum contacts are present, they must be balanced with other factors to determine whether personal jurisdiction affords substantial justice, is reasonable and compatible with fair play.... Factors to be evaluated include the burden on the defendant, the forum state's interest, the plaintiff's interest, the system's interest in obtaining the most efficient resolution of controversies, and the furtherance of fundamental substantive social policies.
. . . . .
(Emphasis added; citations omitted; footnotes omitted)
*1352 For the reasons set forth in the next section of this opinion, we hold that Grand Union agreed to provide twenty-five percent (25%) of the $1,280,000 in hull coverage on the M/V MISS JULIE MAC. This vessel's homeport was Berwick, St. Mary Parish, Louisiana, and it was owned by Gulf Wide, a Louisiana corporation. Grand Union, by agreeing to provide insurance coverage on the M/V MISS JULIE MAC, was purposefully directing its business activities toward the forum state. This litigation resulted from foreseeable injuries (failure to pay insurance proceeds) arising out of these activities. Thus, Grand Union had fair warning that its activities may subject it to Louisiana's jurisdiction. Louisiana courts have a manifest interest in providing effective means of redress for its citizens when their insurers fail to pay claims. The burden on Grand Union in defending this suit in Louisiana was not unfair. The basic due process requirements for jurisdiction over the person have been met in this case. See McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The trial court did not err in finding it had personal jurisdiction over Grand Union.
This assignment of error is without merit.

INSURANCE COVERAGE PROVIDED BY GRAND UNION

(Assignments of error numbers 2, 3, and 4)
Grand Union contends that the trial court erred in finding that Gulf Wide had met its burden of proving that Grand Union provided insurance coverage and in relying on Guaranty Bank's expert in making its decision.
A party seeking recovery under an insurance policy has the burden of establishing every fact in issue which is essential to his cause of action or right of recovery, including existence of the policy sued on, its terms and provisions, and coverage of the claim sued on. Oliver v. Saia, 510 So.2d 770 (La.App. 1st Cir.), writ denied, 514 So.2d 463 (La.1987); B.T.U. Insulators, Inc. v. Maryland Casualty Company, 175 So.2d 899 (La.App. 2nd Cir.1965).
The burden is on the plaintiff to initially establish a prima facie case, and failure to establish such a case defeats his cause of action. Prima facie evidence is evidence sufficient to establish a given fact, which, if not rebutted or contradicted, will remain sufficient. Once a prima facie case has been established by the plaintiff by a preponderance of the evidence, the burden shifts to the defendant. Harrigan v. Freeman, 498 So.2d 58 (La.App. 1st Cir.1986).
Prima facie evidence of the existence of an insurance contract and coverage under that insurance contract is the insurance contract itself. Cf. Holland v. Aetna Life & Casualty Insurance Co., 385 So.2d 316 (La.App. 1st Cir.1980).
In this case, Gulf Wide established a prima facie case of existence of an insurance contract and coverage under this insurance contract. At trial, Gulf Wide introduced the insurance policy issued to it by AIM. It also introduced the cover notes issued by IMR and Kasko & Lager. All of these documents indicated that Grand Union provided twenty-five percent (25%) of the hull coverage on the M/V MISS JULIE MAC.
Harry Hover, president of AIM, testified that his company received the IMR cover note and issued its policy based on this cover note. He testified that when dealing with London underwriters, the cover note of the underwriter is authority for the broker to issue a binder. See La.R.S. 22:631. He testified that the binder provided coverage and that most London underwriters do not issue policies, only cover notes.
Robert Breeden, Guaranty Bank's expert in the customs, practices, and usage in the marine insurance industry, testified that London underwriters generally do not issue policies to their insureds. He testified that cover notes represent the insurance contract and set forth the conditions of coverage.
The trial court heard this evidence and accepted it. This evidence established prima facie proof. Once Gulf Wide established *1353 a prima facie case of the existence of an insurance contract and coverage under this insurance contract, the burden shifted to Grand Union.
Grand Union did not present any evidence at trial. It chose to base its defense on the weakness of Gulf Wide's case, rather than the strength of its own. Since Grand Union did not contradict or rebut the prima facie evidence presented by Gulf Wide, this prima facie evidence remained sufficient, and Gulf Wide met its burden of proof.
The trial court did not err in relying on Guaranty Bank's expert in making its decision and in finding that Gulf Wide had met its burden of proving that Grand Union provided insurance coverage.
These assignments of error are without merit.

STATUTORY PENALTIES

(Assignments of error numbers 5 and 7)
Grand Union contends that the trial court was manifestly erroneous in finding that it was arbitrary, capricious and without probable cause in refusing to pay Gulf Wide's claim and in awarding Gulf Wide statutory penalties. Grand Union also contends that the trial court erred in awarding penalties of twelve percent (12%) instead of ten percent (10%) and in awarding an excessive attorney fee.
La.R.S. 22:658 provides, in part, as follows:
A. All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
B. (1) Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.
. . . . .
Since this statutory provision is penal in nature, it is to be strictly construed and the stipulated sanctions should be imposed only in those instances in which the facts negate probable cause for nonpayment. Scott v. Insurance Company of North America, 485 So.2d 50 (La.1986). A claimant for a penalty and an attorney fee under the statute has the burden of proving that the insurer failed to pay the claim within 60 days after receiving "satisfactory proof of loss" of the claim, and that the insurer was arbitrary, capricious or without probable cause in failing to pay. Cantrelle Fence and Supply Company, Inc. v. Allstate Insurance Company, 515 So.2d 1074 (La.1987); McDill v. Utica Mutual Insurance Company, 475 So.2d 1085 (La. 1985). A "satisfactory proof of loss" within the meaning of La.R.S. 22:658 is that which is sufficient to fully apprise the insurer of the insured's claim. McDill v. Utica Mutual Insurance Company, 475 So.2d at 1089.
Whether or not a refusal to pay benefits is arbitrary, capricious or without probable cause depends primarily on the facts known to the insurer at the time of its action. Since this is primarily a factual issue, the trial court's finding should not be disturbed on appeal absent manifest error. Scott v. Insurance Company of North America, 485 So.2d at 52.
The record reveals that immediately after the sinking of the M/V MISS JULIE MAC on June 9, 1984, Gulf Wide notified AIM of the loss of the vessel. AIM in turn notified all brokers who had been instrumental in securing coverage on the vessel *1354 of the loss. Telexes were introduced into evidence which showed that Gulf Wide had submitted the proper proof of loss to the London brokers and underwriters. As a result of this proof of loss, all London underwriters, except Grand Union and Great Intercontinental paid their respective percentages of insurance coverage proceeds to Gulf Wide. This suit was filed on March 19, 1985. Grand Union did not present any evidence to substantiate its allegation that the proof of loss was submitted to brokers who did not have authority to act for it. Gulf Wide established a prima facie case of insurance coverage, and established that notice of the sinking (proof of loss) was made. Grand Union did not present any evidence to justify its failure to pay within 60 days. After a review of the record, we find that the trial court was not manifestly erroneous in finding Grand Union was arbitrary, capricious or without probable cause in denying the claim of Gulf Wide.
La.R.S. 22:658 currently provides for a penalty in the amount of ten percent (10%) on the total amount of the loss. The ten percent (10%) penalty was changed from a twelve percent (12%) penalty by Acts 1986, No. 132, § 1, effective June 26, 1986. This change in La.R.S. 22:658 was substantive and cannot be applied retroactively. See Petroleum Helicopters, Inc. v. Avco Corporation, 513 So.2d 1188 (La. 1987). Thus, the time when the right to the statutory penalty comes into existence determines which penalty percentage applies.
A claim on an insurance contract controlled by La.R.S. 22:658 becomes due 60 days after a satisfactory proof of loss has been submitted. Haynes v. Standard Fire Insurance Company, 370 So.2d 118 (La.App. 1st Cir.1979). Also, the right to a penalty comes into existence 60 days after a satisfactory proof of loss has been submitted.
Shortly after the sinking of the vessel on June 9, 1984, Gulf Wide submitted a satisfactory proof of loss. Suit was filed on March 19, 1985. The effective date of the penalty percentage change was not until June 26, 1986, which was more than 60 days after the satisfactory proof of loss was submitted. Thus, the twelve percent (12%) penalty provision applies in this case, and the trial court was correct in assessing the penalty at this percentage.
Attorney fees are subject to review and control by the courts. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). Rule 1.5 of the Louisiana Rules of Professional Conduct states, in part:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
. . . . .
The Louisiana Rules of Professional Conduct (formerly the Code of Professional Responsibility) have the force and effect of substantive law. City of Baton Rouge v. Stauffer Chemical Company, 500 So.2d 397 (La.1987). The courts may inquire into the reasonableness of an attorney fee. Leenerts Farms, Inc. v. Rogers, 421 So.2d at 219. While it is true that a court is required to allow the introduction of "all admissible evidence" when an attorney fee is claimed (La.R.S. 13:3738), nevertheless, proof of the value of an attorney's services is not necessary where the services *1355 are evident from the record and/or are rendered under the supervision of the court. Richard v. Broussard, 482 So.2d 729 (La.App. 1st Cir.1985), aff'd, 495 So.2d 1291 (La.1986). A trial court judge has much discretion in fixing an attorney fee, and his award will not be modified on appeal absent a showing of an abuse of discretion. Central Progressive Bank v. Bradley, 506 So.2d 711 (La.App. 1st Cir.), writ denied, 508 So.2d 74 (La.1987); Richard v. Broussard, 482 So.2d at 734.
The trial court awarded an attorney fee of thirty-three and one-third percent (331/3%) on the "entire amount" awarded. Thus, the attorney fee awarded is in excess of $100,000. The record does not reflect that an evidentiary hearing was held to determine the reasonableness of the fee. The record only reflects the following work done by counsel for Gulf Wide:
(1) March 19, 1985filed petition;
(2) October 23, 1986filed a three page memorandum in opposition to declinatory exception raising the objection of lack of personal jurisdiction;
(3) November 10, 1986attended a one day hearing on exception raising objection of lack of personal jurisdiction;
(4) August 24, 1987filed a four page response to request for admission;
(5) November 18, 1987filed motion for summary judgment and a three page memorandum in support of this motion;
(6) January 15, 1988attended a one day hearing on motion for summary judgment;
(7) January 19, 1988filed motion to set for trial;
(8) May 26, 1988filed motion to cancel discovery;
(9) June 3, 1988filed a three page request for admission;
(10) June 20, 1988filed a three page pretrial memorandum; and
(11) June 21, 1988one day trial of case.
This evidence of record is not sufficient to justify an attorney fee in excess of $100,000. However, it is apparent that all available evidence to justify the fee has not been placed of record. In such a situation, this court has authority, in the interest of justice, to remand for an evidentiary hearing. La.C.C.P. art. 2164; Thibaut, Thibaut, Garrett and Bacot v. Smith and Loveless, Inc., 517 So.2d 222 (La.App. 1st Cir.1987); Richard v. Broussard, 482 So.2d at 735. At the evidentiary hearing, the trial court shall fix a reasonable attorney fee after considering the factors set forth in Rule 1.5 of the Louisiana Rules of Professional Conduct.
Assignment of error number 7 is without merit; Assignment of error number 5 has merit.

INTEREST

(Assignment of error number 6)
Grand Union contends that the trial court erred in awarding interest from the date of judicial demand on the attorney fee and 12% penalty awards.
Interest on a penalty and attorney fee award runs only from the date of the trial court judgment. Alexander v. Burroughs Corporation, 359 So.2d 607 (La.1978); Roland v. Roland, 519 So.2d 1177 (La.App. 1st Cir.1987); Economy Auto Salvage, Inc. v. Allstate Insurance Company, 499 So.2d 963 (La.App. 3rd Cir.), writ denied, 501 So.2d 199 (La.1986).
The trial court erred in awarding interest on the 12% penalty and attorney fee award from the date of judicial demand.
This assignment of error has merit.

DECREE
For the foregoing reasons, the thirty-three and one-third percent (331/3%) attorney fee award is reversed, and this portion of this action is remanded to the trial court for an evidentiary hearing and fixing of a reasonable attorney fee. The judgment of the trial court is amended to award legal interest on the 12% penalty and attorney fee awards from the date of the original trial court judgment. In all other respects, *1356 the judgment of the trial court is affirmed. Grand Union is cast for the cost of this appeal.
AMENDED AND AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
*1357 APPENDIX A

*1358 
*1359 
*1360