JsBOWES, Judge.
Defendants, State of Louisiana, through the Department of Social Services, Office of Community Services (hereinafter “DSS/OCS”) and Cathy Cody LaBauve, filed this appeal from a judgment finding them jointly, severally and solidarily liable for the wrongful death of the minor child, Joshua Todd, and awarding to plaintiff, Sheila Todd, the amount of $300,000.00 for the loss of love, affection, service and society of her son and the amount of $25,000.00 for the pain and suffering experienced by Joshua Todd prior to his death, plus special damages.
Plaintiff has answered the appeal alleging that the damages awarded are inadequate and should be increased. We amend to delete the award for a tombstone, and as amended, affirm.

\ «FACTS

On October 12, 1993, DSS/OCS assigned case worker Cathy Cody LaBauve to investigate an allegation of child abuse. After a preliminary “investigation,” Ms. LaBauve separated the child, age 11, from his mother (plaintiff herein), and ordered the mother to have no contact with the child until her investigation was complete. On October 15, 1993, the child committed suicide by hanging.
The trial judge, in her reasons for judgment, gave an extensive and well reasoned finding of the facts leading to Joshua Todd’s death, which we adopt as our own:
Joshua Todd, decedent, was born unto plaintiff, Sheila Todd, and her former husband, Roy Todd, on March 17, 1982. On July 25, 1990, Sheila and Roy Todd were divorced and Mrs. Todd was granted the sole custody of her three (3) children, Jeremy, Joshua and Kyle. On October 12,1993, the DSS/OCS received a telephone call from an anonymous informant, now known to be Carolyn Wells, acting principal of Jefferson Elementary School, claiming a suspected case of child abuse involving Joshua Todd. Cathy Cody LaBauve was assigned to the investigation.
Pursuant to her duties, LaBauve traveled to Jefferson Elementary and interviewed the informant, Carolyn Wells; Joshua’s teacher, Michelle LeBlanc; Joshua, and his younger brother, Kyle. LaBau-ve learned that Joshua exhibited an apparent bruise upon the posterior shoulder area. At trial, Ms. Wells testified that Joshua was “beat up,” having bruises covering 30% to 40% of his back, “the worst beating she had ever seen.” Ms. LeBlanc testified of a single bruise resembling a “hand print.” Ms. LaBauve more accurately described her observation as “possibly” a hand print.
15Pr. Frasher MaeKenzie, assistant coroner of the Parish of Jefferson, conducted an autopsy of Joshua on Saturday, October 16, 1993, only four days after DSS/OCS involvement and 24 hours after death. He testified that the autopsy revealed no such ■ bruises or other evidence of external injury. In response to questioning by Mr. Moran, counsel for the State, Dr. Mac-Kenzie, affirmed that had such bruises, in fact, existed on October 12, 1993, he would have expected them to be visible at the time of the autopsy.
Based on the evidence and testimony of Joshua’s teachers and LaBauve’s interviews with Joshua; his younger brother, Kyle; Joshua’s father, Roy; his older brother, Jeremy; and the paternal grandmother, Henrietta LaBauve was aware that there had been no prior incidents of alleged abuse involving Joshua.
LaBauve was advised and informed that Joshua, exhibited a behavior disorder that manifested in unprovoked temper tantrums. Joshua was described by his teacher as physically and verbally aggressive, exhibiting hostility toward his teachers, students, and other authority figures. Joshua’s teacher, Ms. LeBlanc, advised LaBauve that Joshua tended to exaggerate his problems to get attention. During the initial interview of Ms. LeBlanc, LaBauve was advised that Joshua was, or had been recently, prescribed Prozac. *317 Joshua gave conflicting reports as to the source of the bruise, first stating that he received it from his brother, and subsequently stating that he received it from his mother. During the course of the ten (10) minute interview with LaBauve, Joshua admitted to her that he had stricken his mother in the breast the evening before. He further stated to LaBauve that during the course of the alleged altercation with his mother the evening before that she “beat down the door to the bathroom” to gain access to him. This allegation by Joshua to LaBauve was noted by LaBauve during her “home study” of Mrs. Todd’s home later that day as obviously not tme. She [^admitted making a particular note that the bathroom door appeared intact and undamaged. Despite the questions raised by the discrepancies in Joshua’s version of the facts, LaBauve testified that she believed Joshua’s story. As such, La-Bauve’s testimony was regarded with some skepticism by this Court.
Thereafter, LaBauve made a self-determination of abuse severe enough to warrant emergency removal of Joshua from his mother. LaBauve made this decision based upon approximately 75 minutes of interviews, none of which were with Mrs. Todd. LaBauve ignored critical information offered by Joshua’s teachers and Mrs. Todd’s boyfriend, Remy Parr. During the interviews LaBauve learned that Joshua had been prescribed Prozac and that Joshua had been previously hospitalized at both Coliseum Medical Center and East Jefferson General Hospital for depression and suicidal ideations. LaBauve’s supervisor, Yvonne Davis, testified that their primary purpose at OCS is to “protect the children.” As such, Davis testified that she would have expected LaBauve to investigate the fact that an eleven year old had been recently prescribed an “anti-depressant” as well as having been previously admitted to mental health facilities. However, no such investigation was conducted by LaBauve. In fact, the above mentioned interviews and home study comprised the entire “investigation” by LaBauve.
These 75 minutes of interviews did not include the State’s own mandatory face-to-face interview with the mother, Sheila Todd. Relying upon an incomplete investigation, LaBauve made a rash decision to separate Mrs. Todd and Joshua. In addition, LaBauve ordered Mrs. Todd not to have any contact with Joshua until her investigation was complete.

ANALYSIS

|7Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315. Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill. La. C.C. art. 2316. An employer is held liable for the negligent acts of his employee committed in the course and scope of his employment. La. C.C. art. 2320.
In Picou v. Hartford Ins. Co., 558 So.2d 787, 790 (La.App. 5 Cir.1990) this Court said:
Louisiana jurisprudence dictates that in a tort action courts are to apply a “duty risk” analysis to determine whether a defendant’s conduct was the legal cause of the plaintiffs injury. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). Under a duty risk analysis, there are the following inquiries: (1) What, if any, duty was owed by the defendant to the plaintiff? (2) Was there a breach of the duty? (3) Was that breach a substantial cause in fact of the injury? (4) Was the risk and harm within the scope of the protection afforded by the duty breached? Jones v. Robbins, 289 So.2d 104 (La.1974); Hill v. Lundin & Associates, Inc., supra; Annis v. Shapiro, 517 So.2d 1237 (La.App. 4th Cir.1987). Whether a defendant owes a plaintiff a legal duty is a question of law. Whether a defendant has breached a duty owed is a question of fact. Chavez v. Noble Drilling Corp., 567 F.2d 287 (5th Cir.1978).
The trial judge found liability on the part of DSS/OCS and Ms. LaBauve for the following reasons, which we quote here:
Based on the law and the evidence presented to this Court, this Court finds that LaBauve breached her duties as follows: LaBauve breached her legal |gduty to *318 properly investígate the unsubstantiated allegations of abuse. LaBauve breached her legal duty by failing to investigate the psychological history of Joshua upon being informed on Joshua’s mental difficulties. LaBauve breached her legal duty by failing to conduct the mandated face-to-face interview with Mrs. Todd within 24 hours. Finally, LaBauve breached her legal duty by failing to complete the statutory mandatory training.
Appellants contend that this finding was erroneous, and they present ten assignments of error for our review. In our analysis of these issues presented appellant, we are bound by the “manifest error” standard of review. Under that standard, the court of appeal should not upset the factual findings of a trial court absent manifest error or unless clearly wrong. A proper review, therefore, cannot be “completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record established that the finding is not clearly wrong.” Where two permissible, views of the evidence exists, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 220.

IMMUNITY

In the first two allegations of error, appellants allege Ms. LaBauve was afforded immunity under La. Ch.C. art. 612 and that the trial court erred in finding Ms. LaBauve personally liable for the death of Joshua Todd. In the third allegation of error, it is alleged that the DSS/OCS was |9likewise afforded immunity under La. R.S. 9:2798.1 and the trial court erred in finding the DSS/OCS liable for the death of Joshua Todd.
La. Children’s Code articles 609 et seq. provides for child abuse reporting and investigation.
La. Ch.C. art. 611 provides:
A. Any person who in good faith makes a report, cooperates in any investigation arising as a result of such report, or participates in judicial proceedings authorized under the provisions of this Chapter, or any caseworker who in good faith conducts an investigation, makes an investigative judgment or disposition, or releases or uses information contained in the central registry for the purpose of protecting a child, shall have immunity from civil or criminal liability that otherwise might be incurred or imposed.
B. This immunity shall not be extended to:
(1) Any alleged principal, conspirator, or accessory to an offense involving the abuse or neglect of the child.
(2) Any person who makes a report known to be false or with reckless disregard for the truth of the report.
La. Ch.C. art. 612(G) provides:
G. The Department of Social Services shall set priorities for case response and allocate staff resources to cases identified by reporters as presenting immediate substantial risk of harm to children. Absent evidence of willful or intentional misconduct or gross negligence in carrying out the investigative functions of the state child protection program, caseworkers, supervisors, program managers, and agency heads shall be immune from civil and criminal liability in any legal action | ip arising from the department’s decisions made relative to the setting of priorities for cases and targeting of staff resources.
La. R.S.- 9:2798.1 provides in part:
A. As used in this Section, “public entity” means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, in-strumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
*319 C. The provisions of Subsection B of this Section are not applicable:
[[Image here]]
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
It is appellants’ contention that the trial court erred in failing to find that Ms. LaBau-ve and DSS/OCS were immune from civil liability under these statutes.
In Ambrose v. New Orleans Police Department Ambulance Service, 639 So.2d 216, 219 (La.1994), the Louisiana Supreme Court defined gross negligence as the “want of even slight care and diligence” and the “want of that diligence which even careless men are accustomed to exercise, or an extreme departure from ordinary care.” See also Trondsen Inv. Irish-Italian Parade Committee, 95-28 (La.App. 5 Cir. 5/10/95), 656 So.2d 694, writ denied, 95-1467 (La.9/22/95), 660 So.2d 476.
In Cates v. Beauregard Electrical Cooperative, Inc., 316 So.2d 907, 916 (La.App. 3 Cir.1975), aff'd, 328 So.2d 367 (La.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976) the court defined wanton, willful and reckless as follows:
The terms “willful,” “wanton,” and “reckless” have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which so far from a proper state of mind that it is treated in may respects as if harm was intended. The usual meaning assigned to do [sic] the terms that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.
It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.
The Cates decision was quoted with approval by this Court in Jeansonne v. Detillier, 94-903 (La.App. 5 Cir. 5/10/95), 656 So.2d 689, writ denied, 95-1410 (La.9/22/95), 660 So.2d 471.
The trial court found Ms. LaBauve’s “investigation” was conducted in a grossly negligent manner, stating that “LaBauve’s actions and inaction’s [sic] surrounding the so-called ‘investigation’ were so outrageous and reckless that the immunity provision does not absolve liability.”
I12T0 reach the determination that Ms. LaBauve’s conduct was substandard, the court first found that Ms. LaBauve failed to properly investigate the unsubstantiated allegation of abuse. In this regard the court regarded with skepticism Ms. LaBauve’s testimony that she believed the version of events as related by the child, despite the knowledge that the child had lied about the breaking down of the bathroom door and despite being told by the child’s teachers that the child was physically and verbally aggressive, that he exhibited hostility toward authority figures and that he tended to exaggerate his problems to get attention.
The trial judge next determined that Ms. LaBauve was negligent in failing to investigate the psychological history of the child upon being told of the child’s mental difficulties, despite her knowledge that the child had been prescribed Prozac (a powerful antidepressant), that he was in a special education classes for behavior and emotional difficulties and that he had been committed- to Coliseum House for psychological problems.
The court additionally found that LaBauve was negligent in failing to conduct an interview with the plaintiff, the child’s mother, within a mandated twenty-four hours-following the allegation of abuse. In fact, Ms. LaBauve canceled two appointments with Mrs. Todd and had not yet conducted that meeting when the child died, some three days later. LaBauve cited her heavy caseload as the reason for not conducting the meeting.
| isThe court found that LaBauve was negligent in failing to make an audio recording of the interview with the child, although the mother was not present when the interview occurred.
*320 The court found that Ms. LaBauve was negligent in failing to complete the statutory mandatory training prior to assuming her duties.
Based on these facts, we see no manifest error in the determination of liability made by the trial court. The facts show that Ms. LaBauve, after a forty-five minute investigation and with compílete disregard for the information she gathered in that investigation, remove the child from the physical custody of his mother, who had been granted sole custody, and placed the child with his father. (Note: The issue of whether Ms. LaBauve’s actions amounted to an assumption of custody of the child is discussed infra). Her actions, in failing to properly and timely investigate the unsubstantiated allegations of child abuse, was “an extreme departure from ordinary care” and lacked in even “that diligence which even careless men are accustomed to exercise.”

LEGAL CAUSE AND CAUSE IN FACT

In the ninth assignment of error, the appellants allege that the trial court erred in finding that the actions of DSS/OCS and/or Ms. LaBauve was a cause in fact and the legal cause of the death of Joshua Todd.
The Louisiana Supreme Court in Rick v. State, Dept. of Transp. and Development, 630 So.2d 1271, 1275 (La.1994) stated that:
| ^Causation is a fact specific inquiry. The issue is whether defendant’s conduct was, in fact, a cause of plaintiffs harm. Great deference is accorded the trier of fact on the question of factual causation. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990); Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990); Rosell v. ESCO, 549 So.2d 840 (La.1989); Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). When multiple causes are present, defendant’s conduct is a cause in fact when it is a factor generating plaintiffs harm. Forest v. State, Thru Louisiana D. of Transp., 493 So.2d 563 (La.1986); Vicknair v. Hibernia Bldg. Corp., 479 So.2d 904 (La.1985); Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). Direct or circumstantial evidence constitutes a preponderance when it shows causation is more probable than not. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
Furthermore, in Reese v. Griffith, 568 So.2d 1146, 1150 (La.App. 5 Cir.1990) this Court said:
In determining whether any negligence on the part of the defendant is actionable, the negligence must be both a cause in fact and the legal cause of the injury. Alford v. Estate of Zanca, 552 So.2d 7 (La.App. 5 Cir.1989). Legal cause means there must be a proximate relation between defendant’s act and the harm. Alford v. Estate of Zanca, Id. Cause-infact is found where the acts of defendant were a substantial factor in the injury, without which the accident would not have occurred. Miguez v. Urban Developments, Inc., 451 So.2d 614 (La.App. 5 Cir.1984) [writ denied, 452 So.2d 1176 (La.1984) ].
[Emphasis added].
In this case, the trial court found that Ms. LaBauve’s actions in conducting the investigation were reckless and negligent and these actions | isdid not comply with the specific course of conduct to be followed in an investigation prescribed by the DSS/OCS. These actions caused Joshua to be removed from his home and separated from his mother, resulted in harm to both Joshua and his mother and which certainly contributed to the child’s death by forcing him to be left alone and unattended by anyone. We cannot say that the trial judge was clearly wrong in this determination.

COMPARATIVE NEGLIGENCE

ASSIGNMENT OF ERROR NUMBER SEVEN

In assignment of error number seven (7), the appellants allege that the trial court erred in failing to find plaintiff comparatively negligent for the death of her son. It is the appellants’ contention that the failure of plaintiff to tell Ms. LaBauve of the emotional condition of her son was negligent and contributed to her death.
*321 In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), the Louisiana Supreme Court set forth factors to be used in determining the degree of fault assigned:
In assigning percentages of fault attributable to each tort-feasor, a court should consider both the nature of each party’s conduct and the extent of the relation between that conduct and the damages suffered. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985). In Watson, the Louisiana Supreme Court indicated which factors should be considered in order to apportion fault:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct [ 16resulted from inadvertence or involved an awareness of the danger, (2)-how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. [Emphasis supplied].
See Steven E., Joyce Ray Johnson v. State Farm Mutual Automobile Insurance Company, 95-1027 (La.App. 5 Cir. 5/15/96) 675 So.2d 1161.
The trier of fact must consider both the nature of the conduct of each party and the extent of the causal relation between the conduct and the damages. Butler v. Eastern College of Health Vocations, Inc., 93-704 (La.App. 5 Cir. 1/25/94), 631 So.2d 1254.
Finally, we must keep in mind that our standard of review regarding apportionment of fault is the same as with any other factual determination by the trier of fact, namely whether the trial court was clearly wrong or manifestly erroneous. Blanchard v. Means Industries, Inc., 93-715 (La.App. 5 Cir. 3/16/94), 635 So.2d 288.
At the trial it was established that Ms. LaBauve contacted Mrs. Todd on October 12, 1993 and requested an immediate meeting. Mrs. Todd was unable to meet with her immediately, as she was working and could not take time off. Mrs. LaBauve then scheduled a meeting for the next day, |i7October 13, and then the day after, October 14; however, both meetings were canceled by La-Bauve. At trial, LaBauve testified that she canceled both meetings' because of her heavy caseload. Ms. LaBauve did speak by telephone with Mrs. Todd on October 15, and told her again not to have contact with the child. The child committed suicide on October 15,1993.
At the trial, Mrs. Todd testified that she called LaBauve’s office to meet with her. On October 13, 1993, Mrs. Todd took her lunch time to meet with LaBauve and she had all of her documentation regarding her son’s life available for Ms. LaBauve, and that Airs. LaBauve once again, did not make the scheduled appointment. An appointment was set for the next day, and Mrs. Todd again had her documentation to give to Ms. LaBauve, however that meeting was also canceled by LaBauve. It would have been unrealistic for Mrs. Todd to read to LaBauve the wording of these documents over the phone, nor was she ever asked to do so. If LaBauve had met with Mrs. Todd, she would have discovered the hostile dependent relationship between the child and the mother, that the child suffered from depression, and that a friend of the child had recently committed suicide. What Mrs. Todd did not know, and could not communicate to Ms. LaBauve, was that the child would commit suicide.
During the time period from initial contact until the child’s death three days later, Ms. LaBauve already knew that the child was in a special education class for behavior and emotional disorders, that the child was classified as aggressive, that he had been prescribed Prozac (which | ^medication is often prescribed for depression), and that he had been hospitalized at Coliseum House. Ms. LaBauve also hneiu that the child’s story of the events of the night of October 11, 1993 was, at least in part, untrue as she had made *322 a special point of finding out the bathroom door was undamaged, contrary to the child’s assertions.
Based on these findings, the trial court apparently found that Mrs. Todd was not comparatively negligent in the death of her son. We see no manifest error in this determination.

FINDINGS OF FACT

In assignments of error numbers four (4), five (5), six (6) and eight (8), appellants challenge specific findings of fact made by the trial court.
In assignment of error number four, it is alleged that the trial court erred in not finding that Ms. LaBauve’s failure to meet with Mrs. Todd within 24 hours was caused by the plaintiff.
The record reflected that Ms. LaBauve initially contacted Mrs. Todd after first interviewing the child and requested that she immediately leave work and meet. Mrs. Todd responded that she was unable, as she was the only person at the office (her employment) and that she had already taken too much time off for her son, jeopardizing her job. Ms. LaBauve then requested that she make the home visit, and Mrs. Todd made arrangements to have someone let Ms. La-Bauve into her house. A meeting was set for the next day at lunch time and it was Ms. LaBauve who failed to keep that meeting. Under these circumstances, we cannot say that the trial court | ^committed manifest error in finding that Ms. LaBauve failed to meet with the custodial parent within twenty-four hours.
In the fifth allegation of error, appellants assert that the trial court erred in finding that Ms. LaBauve did not have sufficient evidence to indicate possible physical abuse by the plaintiff.
The record reflects that, during the 45 minute investigation, Ms. LaBauve discovered that the child had a mark which “possibly” could have been a bruise. The child told her that his mother had beaten him after “breaking in” the bathroom door. Ms. LaBauve discovered that the child’s story was, at least in part, false after she examined the mother’s house and found the bathroom door intact. She also was told by the child’s teachers that the child was aggressive toward authority figures, and tended to exaggerate events to make himself the center of attention.
Based on these facts, the trial court found that Ms. LaBauve did not have sufficient evidence to warrant a finding of possible physical abuse which would necessitate separating the child from his mother. We again find no manifest error in this determination.
In the sixth assignment of error, the appellants allege that the trial court erred in ruling that the state had legal custody of the minor at the time of his death. It appears to be the state’s contention that plaintiff voluntarily placed the minor in his father’s care.
The testimony and evidence at trial showed that the parents were divorced and the mother was granted sole custody of the minor child. As a Rpresult of the altercation between the minor and plaintiff the night of October 11 and before the investigation began, Mrs. Todd contacted the child’s father and asked if the child could stay with him after school the next day for a “couple” of hours.
Ms. LaBauve’s investigation began during the school hours of October 12. After Ms. LaBauve spoke with the child and the teachers at school, she asked Mrs. Todd to name someone who could take the child for several days, and Mrs. Todd gave the father’s name. Ms. LaBauve then told Mrs. Todd not to have any contact with the child for several days, or until the investigation was completed. On the morning of October 15, Ms. LaBauve again told Mrs. Todd not to have any contact with the child.- This long term placement was not what Mrs. Todd had planned for or agreed to when she called the child’s father and asked him to take the child for a “couple ” of hours.
La. Ch.C. art. 619 provides for the issuance of instanter orders of custody when the department feels that it is necessary to remove the child from his home. However, this procedure was not utilized in this case. Instead, Ms. LaBauve made a decision to *323 place the child with his father pending the outcome of the investigation of alleged abuse.
After consideration of these facts, the trial court found that Mrs. Todd did not voluntarily place the minor child with his father for several days. The trial court found that it was the department, through Ms. LaBauve, who asstimed “legal” custody and ivho then placed the child with Rithe noncustodial parent. We see no manifest error in this finding of the trial judge.
In their eighth assignment of error, appellants urge that the trial court erred in finding that Ms. LaBauve was not properly trained in her duties as an investigator for the department and in accordance with the Policy Manual of the OSC implementing R.S. 46:285.
The trial judge made the following factual findings:
Prior to commencement of undertaking the duties of caseworker, LSA-R.S. 46:285 mandates that each such individual shall have completed not less than 32 hours of training, and that each individual shall complete an additional 32 hours of training within six (6) months of commencing those duties. The State failed to submit any evidence that LaBauve had completed the mandatory training requirements of the state statute. LaBauve testified that prior to undertaking her first assignment in March of 1993 she had not completed any training whatsoever. The State submitted a “summary” of courses completed by La-Bauve; however, no evidence was submitted that these courses in any manner compiled with those statutorily mandates. As such, LaBauve failed to complete the statutory, mandatory training.
We cannot say that the trial judge was manifestly erroneous in her finding of fact in this regard. At the trial, Ms. LaBauve admitted that she had no training prior to the commencement of her duties as an investigator. Ms. LaBauve did testify that she completed the “basic 710” training required by OCS; however, there was no evidence to show that this training comported with the requirements of 46:285. Accordingly we cannot say that the trial court was manifestly erroneous in this finding.

DAMAGES

122L1 their tenth (10th) allegation of error, the appellants allege that the trial court erred in awarding excessive damages. Plaintiff has answered this appeal and she alleges that the damages awarded were inadequate.
The role of the appellate court in reviewing general damage awards is not to decide what it considers to be the appropriate award, but is rather to review the exercise of discretion by the trier of fact, and the adequacy of the award should be determined by the facts or circumstances particular to the case under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert den., 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Corvers v. Acme Truck Lines, 95-925 (La.App. 5 Cir. 4/16/96), 673 So.2d 1088. The reviewing court must evaluate the particular injuries and their effects on the particular injured persons. Reck v. Stevens, 373 So.2d 498 (La.1979); LeBlanc v. Continental Grain Co., Inc., 95-813 (La.App. 5 Cir. 3/13/96), 672 So.2d 951. When damages are not susceptible of precise measurement, much discretion is left to the trial court for its reasonable assessment. La. C.C. art.1999; Coco v. Winston Industries, Inc., 341 So .2d 332 (La. 1976); LeBlanc v. Continental Grain Co., supra. Because the discretion vested in the trier of fact is “great,” and even vast, an appellate court should rarely disturb an award of general damages. Youn, supra at 1261. Only after a determination of an abuse of discretion or manifest error is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point that is reasonably within that discretion. Youn, supra; LeBlanc, supra.
RsAppellants allege that the general damage award of $300,000.00 to Mrs. Todd is excessive. After considering the decision of the trial court, we cannot say that the trial court erred:
The suffering that Mrs. Todd has endured since this tragic event was clear and convincing during the trial. Her therapist, Mr. DiGeorge, state that Mrs. Todd belabors under tremendous grief and guilt to this date. She has become withdrawn, *324 introverted and nearly lifeless. Mr. DiG-eorge state that the unusual closeness of Mrs. Todd and Joshua, as described by Dr. Freed, only compounds her sense of loss and hopelessness. Her grief has required her referral to Dr. Louis Escalada, M.D., [for] varying prescriptions of a series of medications.
Dr. Escalada testified by deposition that Mrs. Todd was very tearful, depressed, disorganized and unable to focus on what was going on. Nearly two years after this tragic incident, Dr. Escalada described Mrs. Todd’s condition as remaining in the “first stages of grief.” He opined that Joshua was “like a crutch” to Mrs. Todd. Dr. Escalada opined that Joshua’s death by hanging had a greater effect on Mrs. Todd than if the death would have been from accidental or natural causes. His diagnosis is unresolved grief, major or severe depression of long term duration. Dr. Escalada and Mr. DiGeorge both note that Mrs. Todd continues to exhibit the symptoms of Post Traumatic Stress Syndrome. In addition, the Court finds that Dr. Freed’s testimony concerning the hostile dependent relationship between Mrs. Todd and Joshua substantiates the testimony of Mrs. Todd that she and Joshua had an extremely close relationship that was substantially closer that the typical mother-son relationship.
Mrs. Todd’s testimony was extremely emotional and sincere. The severity of her grief and loss was overwhelming. Mrs. Todd testified that the only thing she has to look forward to is her death so that she can be reunited with Joshua. Dr. Escala-da opined that Mrs. Todd would require therapy and | ^medication for a “few years,” and DiGeorge testified that her therapy would continue for at least another year. Mrs. Todd continues to have a poor appetite, obsessive behavior, and sleeplessness.
Appellants likewise allege as excessive the award of $25,000.00 for pain and suffering of Joshua Todd prior to his death. To reach this award, the trial judge said:
Damages for decedent’s pain and suffering may be awarded when there is a scintilla of evidence of any suffering or pain on part of the deceased. Flight, fear or mental anguish while an ordeal is in progress is legally compensable. In re Medical Panel Bilello, 621 So.2d 6 (La.App. 4th Cir.1993), writ denied, 629 So.2d 1139. (La.1993). The factors to be considered in assessing quantum of pain and suffering are severity and duration. Rhodes v. State through DOTD, 656 So.2d 650, 665 (La.App. 1st Cir.1995) [vacated on other grounds, 95-1848 (La.5/21/96), 674 So.2d 239],
The official cause of death for Joshua is noted in the corner’s report as asphyxia. Joshua suffocated himself to death by hanging. Dr. MacKenzie testified that Joshua’s death occurred over a period of five (5) to forty (40) minutes from the moment of hanging. Having concluded that he and his mother had been permanently separated, Joshua obviously suffered and anguished during that period. The horrendous pain and anguish of suffocating to death can only be imagined.
After great consideration and thought, we do not see an abuse of the vast discretion of the trial judge in this award, and we decline to decrease the awards for general damages as requested by appellants or to increase these awards, as prayed for by appellee.
RsAppellants argue that the trial court erred in awarding, as special damages, the amount of $1,733.29- for the cost of a tombstone, in the absence of any evidence that a tombstone was purchased or at what cost. We agree. It is well settled that it is the plaintiffs burden to prove with legal certainty every item of damage claimed. Keaty v. Moss Motors, 93-1452 (La.App. 3 Cir.6/1/94), 638 So.2d 684, writ den., 94-2211 (La.11/11/94), 644 So.2d 399. Since there is no evidence concerning a tombstone in the record, the trial judge was in error in making this award.

DECREE

For the above discussed reasons, the decision of the trial court is amended to delete the amount of $1,733.29 from the special damage award, The decision of the trial court *325 is affirmed in all other respects. All costs of this appeal are assessed against defendants.
AFFIRMED AND AMENDED.