900 So.2d 322 (2005)
Jimmy L. LENARD, Plaintiff-Appellee
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
No. 39,580-CA.
Court of Appeal of Louisiana, Second Circuit.
April 20, 2005.
Davenport, Files & Kelly by Cody W. Rials, Mike C. Sanders, Monroe, for Appellant.
Johnson & Placke, L.L.P. by Allan L. Placke, West Monroe, for Appellee.
Before STEWART, CARAWAY and MOORE, JJ.
CARAWAY, J.
In this automobile accident with liability of the defendant admitted, the trial court found that the plaintiff had received injuries to his back and neck which caused persistent pain and discomfort through the time of trial some five years after the accident. The trial court awarded $55,000 in general damages and the defendant insurance company appeals. Finding no abuse in the trial court's award of general damages, we affirm.

Facts
On April 12, 1999, 61-year-old Lenard was driving his 1992 Toyota pickup truck south on La. Highway 837 in Calhoun, Louisiana. Lenard estimated that he was traveling about 50 miles per hour as he reached Claiborne Road. As he approached the intersection, a 1985 Ford Bronco driven by James Jordan pulled onto Highway 837. Lenard's truck struck the right front side of Jordan's vehicle. Both vehicles traveled about ten feet from the point of impact. Lenard recalled that the crash jammed his body between the door and the steering wheel of his truck and that his head and shoulder were "up in the cab of *323 the truck." Lenard's vehicle was disabled and ultimately totaled by the insurance company.
When Louisiana State Trooper John Peters responded to the accident, firefighters from a nearby fire station were already checking the drivers for injuries. Jordan was not injured in the crash. On his accident report, Trooper Peters assigned Lenard an injury designation of "D" meaning "possible/complaint" of injury, although the trooper noted no visible injury to Lenard. Nevertheless, an ambulance responded to the accident and transported Lenard to Glenwood Regional Medical Center.
At the hospital, Lenard complained of pain in his head, neck and lower back. X-rays did not reveal any fractures but did show existing degenerative changes in his spine. Doctors prescribed a muscle relaxant and ibuprofen and released Lenard with instructions to return in one to two weeks if his symptoms persisted. Later on the day of the accident, Lenard returned to work in his shop but because he continued to hurt, he sought further medical attention. Lenard was referred to St. Francis Medical Center for an MRI which was negative for significant trauma. According to medical records, Lenard also had the affected areas in his body iced at Health First Therapy Clinic that day.
Lenard had some lower back pain prior to the accident in addition to other minor health problems, including arthritis, that were generally not painfully symptomatic. Lenard attributed his neck and upper back pain to the accident. As Lenard continued to have neck and back pain and migraine headaches over the next two months, he returned to Health First twenty four times for heat, traction and trigger point therapy. He also underwent a nerve conduction study at Glenwood on June 17, 1999, which revealed normal results. Another x-ray on June 21, 1999, revealed only degenerative changes in his spine  likely related to aging  and no acute injury.
On July 22, 1999, Lenard commenced physical therapy. He also began seeing an orthopedic surgeon, Dr. John Ward. Dr. Ward's records from that time are not contained in the record; however, his deposition testimony was presented at trial. Lenard was discharged from physical therapy after approximately one month for lack of progress; he reported fewer but still severe headaches and only temporary pain relief from therapy.
Lenard subsequently commenced chiropractic care at the Mayfield Chiropractic Clinic on August 23, 1999, and underwent spinal manipulation and other physiotherapy through the summer of 2002. The testimony of Lenard's chiropractor, Dr. Bobbi Wiegand, was presented to the trial court, and she described the injuries as relating to the accident as follows:
We were basing the new injury on the fact that the pain that he was experiencing was either different, in the case of his low back, than the prior low back pain that he'd had, or not pain that he had received before the accident, which included like the neck and down into his left arm, the numbness and tingling in his left hand, and the headaches, the occipital, the temporal headaches that he was receiving.
Lenard testified that he suffered from migraine headaches for about three years after the accident and continues to have pain in his neck and shoulders when doing any physical labor. Lenard is self-employed and rebuilds electric motors for his livelihood, but the pain sometimes takes him away from his work for an hour at a time while he rests to relieve his aching neck. Lenard also stated that the pain interferes with his gardening and his sleep. *324 At the time of trial, he continued to take muscle relaxers and painkillers.
Lenard's wife, Evelyn, testified that since the accident, her husband had become unable to handle stress. Evelyn also stated that he had persistent neck pain and is unable to sleep through the night.
For his treatment, Lenard incurred total medical bills of $15,909.58[1] He settled with Jordan's insurer for the $10,000 policy limits. State Farm, Lenard's own underinsured motorist insurance carrier, paid most of his medical bills and $2,000 in general damages. On December 21, 2000, Lenard filed suit against State Farm. A bench trial was held on March 11, 2004. The parties stipulated that Jordan was 100% at fault for the accident. The issues disputed at trial included the amount of medical bills and general damages. After hearing the evidence, the court rendered a written "Judgment & Reasons For Same" in which the court discussed the award of general damages, as follows:
Considering the above and foregoing, and after a trial on the merits, this Court finds that as a result of the accident, Plaintiff has incurred general damages in the amount of $43,0000[2] and is, hereby, awarded same after crediting State Farm with the $10,000 paid by Shelter and after crediting State Farm with the $2000 previously provided by State Farm.
On June 10, 2004, the court signed another judgment entitled "Expedited/Article 1918 Judgment" that designated the above-written reasons as the court's judgment.
A dispute arose between the parties about the amount owed by State Farm under the judgment. State Farm interpreted the judgment to mean that Lenard suffered a total of $43,000 in general damages of which it was responsible for $31,000 because Lenard had already received $10,000 from Jordan's insurer and $2,000 from State Farm. Lenard contended that the court's award of $43,000 was in addition to the amounts he had already received. On June 22, 2004, the parties' counsel wrote letters to the court outlining their positions. On the letter from the plaintiff's attorney, the court wrote:
It was my intention to award plaintiff $43,000 in generals as written.
/s/ 6/30/04
Thereafter, State Farm took a suspensive appeal complaining in part about the proper interpretation of the trial court's judgment in addition to the amount of general damages awarded. Due to the confusion regarding the general damage award as appropriately raised by appellant, this court ordered the trial court to render a money judgment of a sum certain amount clarifying its ruling against State Farm. The trial court clarified its judgment on April 6, 2005, specifying that Lenard was to receive "the full sum of $45,522.22"[3] from State Farm. Thus, the judgment resolves the ambiguity in the trial court's written ruling and evidences a total general damages award of $55,000.

Discussion
What remains to be resolved on appeal is the issue of whether the trial court abused its discretion in awarding *325 Lenard $55,000 in general damages. In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the supreme court explained that an appellate court should rarely disturb a general damage award:
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. . . .
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Citations omitted.
A defendant in a personal injury case takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the tortfeasor's conduct aggravates a pre-existing condition, the tortfeasor must compensate the victim for the full extent of the aggravation. Foreman v. Babin, 04-423 (La.App. 5th Cir.10/12/04), 887 So.2d 143.
At the time of this substantial vehicle crash, Mr. Lenard was a 61-year-old man in relatively good health yet with typical degenerative changes in his cervical and lumbar spine. After the accident he has continued to suffer from neck and upper back pain that interferes with his employment, his housework, his leisure and his sleep. Additionally, he suffered from migraine headaches and required regular chiropractic treatment for approximately three years after the accident. Lenard's long-term ailments caused him to incur more than $15,000 in medical bills. Lenard continues to take painkillers regularly for relief. Considering his history of reporting these chronic difficulties and Lenard's veracity and credibility, the trial court could have concluded that his injuries have persisted for five years. Therefore, on this record we do not find that the trial court's $55,000 award was an abuse of the trial court's vast discretion.

Conclusion
For the above reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] There was a dispute at trial about the amount owed but the trial court ruled in Lenard's favor on this point and this issue has not been appealed.
[2] The document reads "$43,0000" but the parties agree that this is a typographical error and that the amount should have been written "$43,000."
[3] This sum included general damages of $43,000 and unpaid medical costs of $1522.22.