STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 15-263


MICHAEL BURLEY

VERSUS

NEW YORK LIFE INSURANCE COMPANY



**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 48584
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

**DAVID KENT SAVOIE**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
David Kent Savoie, Judges.


**AMENDED AND AFFIRMED.**

**R. Gray Sexton**
**Alesia M. Ardoin**
**Sexton & Hebert**
**10715 N. Oak Hills Parkway**
**Baton Rouge, LA 70810**
**(225) 767-2020**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **New York Life Insurance Company**

**William C. Rowe, Jr.**
**Rowe Law Firm**
**5157 Bluebonnet Boulevard**
**Baton Rouge, LA 70809**
**(225) 293-8787**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
    **Michael Burley**

**SAVOIE, Judge.**

This matter involves New York Life Insurance Company's (New York Life's) appeal of a default judgment rendered against it awarding Plaintiff Michael Burley life insurance proceeds from a policy insuring the life of his brother, as well as damages and penalties for New York Life's breach of duty under La.R.S. 22:1973. New York Life also appeals the denial of its Motion for New Trial.

For the reasons that follow, we affirm the trial court's award in favor of the Plaintiff for $200,000 in policy proceeds and decrease the amount awarded to Plaintiff under La.R.S. 22:1973 to $5,000 in penalties.

## FACTUAL AND PROCEDURAL BACKGROUND

Brothers William and Michael Burley each obtained reciprocal life insurance policies, with the other named as the owner and beneficiary of the policy. They purchased the policies from their personal friend, Mitch Ashmore, who was an agent for New York Life. Mr. Ashmore filled out the application for the policy insuring William's life, and both Michael and William signed the application on October 16, 2012. The policy insuring William's life became effective in December 2012.

William died on April 24, 2013, from a heart attack. Mr. Ashmore assisted Michael with filing a claim for payment of the policy proceeds. On October 14, 2013, New York Life sent a certified letter to Michael noting an inaccurate response to question 3(l) on William's insurance application. The application reflected a response of "no" to the following question:

> In the last ten (10) years, has the Proposed Insured been diagnosed, treated, tested positive for or been given medical advice by a member of the medical profession . . . for drug or alcohol use, used cocaine or other controlled substances (other than as prescribed by a physician), or been counseled or hospitalized for drug or alcohol use?

According to New York Life, however, William's medical records indicated that the answer to question 3(l) should have been "yes." The October 14, 2013 letter further referred to New York Life's normal procedure under the circumstances to refund all premiums paid and void the policy, but gave Michael thirty days to present any additional information. New York Life sent a check to Michael dated January 30, 2014 in the amount of the insurance premiums paid on the policy, but Michael did not deposit the check.

On February 21, 2014, Michael filed suit against New York Life seeking the $200,000 life insurance policy proceeds, as well as penalties and attorney fees pursuant to La.R.S. 22:1892 and/or La.R.S. 22:1973 for New York Life's alleged bad faith handling of the claim. New York Life was served through the Louisiana Secretary of State on April 30, 2014. On June 3, 2014, Michael filed a Motion for Preliminary Default Judgment, noting New York Life's failure to file an Answer, and a preliminary default was entered on June 5, 2014.

A hearing to confirm the default judgment was held on June 10, 2014, wherein Michael testified and documentary evidence was admitted into evidence. The complete record of the confirmation hearing is before us on appeal.

The trial court rendered a default judgment in favor of Michael for the $200,000 policy proceeds. The trial court also awarded $20,000 in penalties under La.R.S. 22:1973, as well as $100,000 in penalties and "33 1/3% for attorney fees" under La.R.S. 23:1892. The judgment was signed on June 10, 2014, and served on New York Life through the Louisiana Secretary of State on June 16, 2014.

On June 23, 2014, New York Life filed a Motion for New Trial. Following a hearing, the trial court took the matter under advisement. On December 19, 2014,

the trial court signed a judgment denying New York Life's Motion for New Trial as to the policy proceeds awarded to Michael. The judgment further provided:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the "Motion for New Trial" is <u>granted</u> for purposes of regargument only . . . with regard to any and all damages, interest or attorney's fees previously awarded under [La.R.S.] 22:1892, et[.] seq.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED the "Motion for New Trial" is <u>denied</u> with regard to damages pursuant to [La.R.S.] 22:1973, because of New York Life Insurance Company's abusive, arbitrary, and capricious handling and denial of Plaintiff's claim, following the death of William Burley, so that an award of $100,000.00 in actual damages to Michael Burley is appropriate based on the record.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED with regard to penalties provided pursuant to [La.R.S.] 22:1973, an award of double the actual damages of $100,000.00, or $200,000.00, in penalties under this provision is appropriate and therefore the "Motion for New Trial" in this regard is <u>denied</u>.

New York Life filed a Motion for Suspensive Appeal.

On March 23, 2015, this court issued an order to New York Life requiring it to show cause why its appeal should not be dismissed for prematurity and/or because it was taken from a partial non-final judgment. We noted that the trial court had granted a new trial on the issue of penalties and attorney fees under La.R.S. 22:1892, and that a new trial had not yet been held. In response thereto, the parties jointly submitted a signed order from the district court dismissing Michael's claims for penalties and attorney fees under La.R.S. 22:1892. The March 23, 2015 order was recalled on May 28, 2015, and the appeal resumed.

## ASSIGNMENTS OF ERROR

On Appeal, New York Life submits the following assignments of error:

1. The (now-retired) District Court erred, as a matter of law, by granting the Default Judgment, since Burley was not able to, and did not present *prima facie* evidence supporting the allegations in his petition.

2.     The District Court erred, as a matter of law, by awarding Burley attorney's fees and penalties because neither the law nor the evidence support such an award.

3.     The District Court erred, as a matter of law, by denying New York Life's Motion for New Trial.

4.     The District Court erred, as a matter of law, by rendering a Judgment on New York Life's Motion for New Trial that 'restructured' the award of 'attorney fees' under the original Default Judgment to an award of additional 'penalties and damages.'

## ANALYSIS

### Confirmation of Default:

In its first two assignments of error, New York Life argues that Michael did not establish prima facie entitlement to either the policy proceeds or to the penalties awarded under La.R.S. 22:1973.[1]

***Burden of Proof and Standard of Review:***

Louisiana Code of Civil Procedure Article 1701(A) allows a judgment of default to be entered against a defendant who fails to answer within the time prescribed by law. Confirmation of a default judgment under La.Code Civ.P. art. 1702(A) requires "proof of the demand that is sufficient to establish a prima facie case."

> For a plaintiff to obtain a default judgment, he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits.

*Thibodeaux v. Burton,* 538 So.2d 1001, 1004 (La.1989) (citations omitted).

---

[1] While Appellant also suggests the award under La.R.S. 22:1892 was not supported by the evidence, we do not need to consider this portion of the default judgment, since Plaintiff/Appellee voluntarily dismissed his claim thereunder.

As we recognized in *Bordelon v. Sayer*, 01-717, p. 3 (La.App. 3 Cir. 3/13/02), 811 So.2d 1232, 1235, *writ denied*, 02-1009 (La. 6/21/02), 819 So.2d 340:

> In reviewing default judgments, appellate courts are restricted to determining the sufficiency of the evidence offered in support of judgment. *Washington v. Grand Casinos of LA., Inc.*[ ], 97-1297 (La.App. 3 Cir. 6/3/98)[,] 715 So.2d 515. Although there is a presumption that the evidence presented supports a default judgment, this presumption does not attach when the record of the confirmation hearing is before the appellate court. *Id.* In such a case, the reviewing court is able to determine from the record whether the evidence upon which the judgment is based was sufficient and competent. *Travis v. Commercial Union Ins.* [*Co.*], 569 So.2d 115 (La.App. 1 Cir.[ ]1990). . . . However, the trial court's conclusion concerning the evidence's sufficiency presents a factual issue which the manifest error rule governs. The manifest error standard of review obligates appellate courts to give great deference to the trial court's findings of fact. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). We will not reverse factual determinations, absent a finding of manifest error. *Id.*

***Plaintiff's Entitlement to Life Insurance Proceeds***:

"A party seeking recovery under an insurance policy has the burden of establishing every fact in issue which is essential to his cause of action or right of recovery, including existence of the policy sued on, its terms and provisions, and coverage of the claim sued on." *Gulf Wide Towing, Inc. v. F.E. Wright (U.K.) Ltd.*, 554 So.2d 1347, 1352 (La.App. 1 Cir. 1989). The insurance contract itself is prima facie evidence of its existence and coverage under the contract. *Id.*

The original insurance policy, along with the signed application made part of the policy, was admitted into evidence after Michael Burley, who was the owner of the policy, authenticated it. The policy lists William Burley as the insured, and Michael Burley as the owner and sole beneficiary. The application was signed by both William and Michael in the presence of New York Life agent Mitch Ashmore on October 16, 2012.

The policy reflects the "base policy face amount" as $200,000. Section One of the policy provides that New York Life will promptly pay proceeds to the beneficiary upon receipt of due proof that the insured died on or after the Effective Date of the policy. The policy date is listed as December 19, 2012. Michael testified that he began paying premiums on the policy in December 2012 or January 2013, and the payments were being drafted directly out of his bank account.

William Burley's certified death certificate, which was admitted into evidence, shows that he died on April 24, 2013. Michael testified that Mr. Ashmore came to his house the night that William died and assured him he would take care of filing the insurance claim. The October 13, 2014 certified letter from New York Life to Michael, admitted into evidence, confirms that a claim had been submitted.

Based on this evidence, Michael established prima facie proof that the policy insuring William's life existed, and that, as a beneficiary of the policy, he was entitled to the insurance proceeds under its terms.

On appeal, New York Life notes that Michael admitted to the trial court that Williams's response to question 3(l) on the insurance application was inaccurate. It then argues that, because Michael failed to prove that the inaccurate response was not made with intent to deceive, and/or was not a material misrepresentation, La.R.S. 22:860 precludes Michael's entitlement to the policy proceeds. Louisiana Revised Statues 22:860 (formerly La.R.S. 22:619) provides:

> B. In any application for life, annuity, or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right

6

to recovery under the contract unless either one of the following is true as to the applicant's statement:

(1) The false statement was made with actual intent to deceive.

(2) The false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer under the policy.

However, reliance on La.R.S. 22:860 is an *insurer's* affirmative defense to avoid coverage, and the *insurer* bears the burden of proof. *See Abshire v. Desmoreaux*, 07-626 (La.App. 3 Cir. 11/7/07), 970 So.2d 1188, *writ denied*, 08-226 (La. 4/4/08), 978 So.2d 326. "[A] defendant against whom a default judgment is confirmed may not assert an affirmative defense on appeal." *Arias v. Stolthaven New Orleans, L.L.C.*, 08-1111, p. 8 (La. 5/5/09), 9 So.3d 815, 820.

Michael's admission that William's insurance application contained an inaccurate response does not shift the burden onto him to prove that La.R.S. 22:860 is not applicable. However, the trial court was required to consider the admission of the inaccurate statement and determine whether, based on the evidence, La.R.S. 22:860 precluded Michael from recovering the policy proceeds.

Intent to deceive under La.R.S. 22:860 is determined from circumstances indicating the insured's knowledge of the falsity of the representations made in the application. *State Farm Mut. Auto. Ins. Co. v. Bridges*, 45,162 (La.App. 2 Cir. 5/19/10), 36 So.3d 1142. There is no evidence in the record suggesting that William knowingly provided an inaccurate response on his insurance application in order to deceive New York Life, and it was not incumbent upon Michael to prove that William's inaccurate statement was not intentional. Michael testified that he had no reason to believe that William's inaccurate response was made intentionally.

The evidence submitted indicated that: (1) Mr. Ashmore filled out the application on behalf of William; (2) William was forthcoming in the application

7

concerning his smoking, his family history of cancer and heart disease, and his history of diverticulitis; (3) The application listed Dr. Moak as William's treating physician; (4) William signed a medical records release authorization allowing New York Life to obtain his medical records from Dr. Moak; (5) Dr. Moak's records obtained by New York Life after William's death revealed William's prior drug abuse treatment in October 2004; and (6) the only treatment for drug abuse within the ten years prior to the insurance application was in October 2004, which was only two years from being outside of the ten-year scope of the requested information. Therefore, the trial court's conclusion that the inaccurate response was not made with an intent to deceive New York Life is reasonably supported by the record.

To prove materiality of a false statement under La.R.S. 22:860, the *insurer* must show that the statement was "of such a nature that, had it been true, the insurer would either not have contracted or would have contracted only at a higher premium rate." *Ned v. Magnolia Life Ins.*, 590 So.2d 733, 735 (La.App. 3 Cir. 1991). There was no evidence upon which the trial court could conclude that, had William indicated he had undergone drug abuse treatment eight years prior to the application, New York Life would not have issued the policy, or would have issued the policy at a higher rate. Michael was not required to prove that the inaccurate statement was not material. Therefore, the record reasonably supports a conclusion that Michael's claim was not barred under La.R.S. 22:860.

New York Life argues that, because William's death certificate lists marijuana use as contributing to his cause of death, the inaccurate response on the insurance application was necessarily material under La.R.S. 22:860. However, an insured's cause of death is irrelevant to an analysis under La.R.S. 22:860. *See*

8

*Jamshidi v. Shelter Mutual Insurance Company*, 471 So.2d 1141 (La.App. 3 Cir. 1985), where the court noted that the test of materiality is not whether the false representation had any bearing on the loss that occurred, but whether the insurer would have issued the policy if the response on the application would have been accurate.

New York Life also argues that Michael failed to sufficiently prove the allegations in his petition that (1) William's cause of death was unrelated to a preexisting condition or treatment, and (2) that the October 14, 2013 letter was a "denial" of the claim, noting that the letter gave Michael thirty days to provide additional information. However, neither of these facts are material to establishing a prima facie entitlement to the policy proceeds.

Therefore, the conclusion of the trial court that Michael established prima facie entitlement to the insurance policy proceeds is reasonably supported by the record and will not be disturbed on appeal.

***Plaintiff's Entitlement to Penalties Under La.R.S. 22:1973:***

New York Life also appeals the trial court's award of penalties under La.R.S. 22:1973. In connection with confirming the default judgment against New York Life, the trial court awarded Michael $20,000 in penalties under La.R.S. 22:1973.

New York Life first contends that La.R.S. 22:1973 is not applicable to claims under life insurance policies. We disagree. Louisiana Revised Statute 22:1973 provides (emphasis added):

> A. *An insurer*, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. *Any insurer* who breaches these duties shall be liable for any damages sustained as a result of the breach.

9

The statute then enumerates certain acts that, "if knowingly committed or performed by *an insurer*", constitute "a breach of the insurer's duties in Subsection A." La.R.S. 22:1973(B) (emphasis added).

We read this language to generally include any and all insurers. While La.R.S. 22:1973(D) specifically excludes "claims made under health and accident insurance policies," nowhere does the statute exclude claims under life insurance policies, and we are not inclined to read such an exclusion into the statute.

New York Life also argues that Michael failed to establish that it breached a duty under La.R.S. 22:1973. A Plaintiff's burden of proof under La.R.S. 22:1973 was discussed in detail in *Lemoine v. Mike Munna, L.L.C.*, 13-2187 (La.App. 1 Cir. 6/6/14), p. 12-14, 148 So.3d 205, 215- 216:

> Louisiana Revised Statute 22:1973 imposes an obligation of good faith and fair dealing on an insurer, including the affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant. An insurer may be subject to penalties not to exceed two times the damages sustained or five thousand dollars, whichever is greater, if the insurer fails to pay a claim due an insured within sixty days of receiving satisfactory proof of loss when such failure is arbitrary, capricious, or without probable cause. La. R.S. 22:1973B(5) and C.
>
> . . . .
>
> One who claims entitlement to penalties . . . has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. *Reed* [*v. State Farm Mut. Auto. Ins. Co.*, 03-107 (La. 10/21/03)], 857 So.2d [1012]. A "satisfactory proof of loss" is that which is sufficient to fully apprise the insurer of the insured's claim. *Louisiana Bag Company, Inc. v. Audubon Indemnity Company*, 08– 0453 (La.12/2/08), 999 So.2d 1104[ ]; *McDill v. Utica Mutual Insurance Company*, 475 So.2d 1085[ ](La.1985). . . .
>
> The sanction[ ] of penalties . . . [is] not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay. *Reed*, 857 So.2d at 1021. The phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious," and a "vexatious refusal to

pay" means "unjustified, without reasonable or probable cause or excuse." *Louisiana Bag Company, Inc*., 999 So.2d at 1114.

. . . .

Whether a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. Because the question is essentially a factual issue, the trial court's finding should not be disturbed on appeal absent manifest error. *Louisiana Bag Company, Inc*., 999 So.2d at 1120; *Reed*, 857 So.2d at 1021.

Satisfactory proof of loss under the policy at issue necessarily includes proof of the insured's death after the effective date of the policy, as well as proof of the claimant's interest in the proceeds. This is consistent with Section One of the policy at issue.

The evidence submitted at the confirmation of default hearing does not indicate the exact date on which Michael submitted proof of satisfactory loss under the policy, but rather only that Mr. Ashmore had assured Michael that he would handle filing the claim. However, the October 14, 2013 letter to Michael from New York Life references the claim, and notes that William died within two years of the effective date. While the letter indicates an inaccurate response on the insurance application, it does not suggest that Michael had failed to submit adequate proof of William's death or Michael's status as a beneficiary of the policy. Therefore, there is reasonable support in the record upon which the trial court could conclude that Michael had submitted satisfactory proof of loss to New York Life.

There is also a reasonable basis upon which the trial court could conclude that New York Life had failed to pay the claim within sixty days of receipt of satisfactory proof of loss. New York Life made no payment at all until at least January 30, 2014, and this is well over sixty days from even the October 14, 2013 letter.

Since there was no evidence indicating when, prior to the October 14, 2013 letter, Michael had submitted satisfactory proof of loss to New York Life, we must use October 14, 2013 as the date that satisfactory proof of loss was received when determining whether New York Life was arbitrary and capricious in failing to timely pay the claim under La.R.S. 22:1973(B)(5).

The October 14, 2013 letter notes the inaccurate response on William's application, and states:

> The normal procedure is to refund all premiums paid for the policy. This places both parties in the same position as if this policy had never been placed in effect.

The letter further provides that "it appears that this is the proper resolution of the matter[,]" but gives Michael thirty days to "present any objective information that [it] should consider[.]"

The Louisiana Supreme Court has made clear that

> While an insurer need not tender payment for amounts that are reasonably in dispute, this court has explicitly found that "there can be *no good reason*"—or no probable cause—for withholding an undisputed amount. Where there is a substantial, reasonable and legitimate dispute as to the extent or amount of the loss, the insurer can avoid the imposition of penalties *only* by unconditionally tendering the undisputed portion of the claim.

*Louisiana Bag Co., Inc.*, 999 So.2d at 1114-1115 (citations omitted).

Pretermitting whether the letter's reference to the inaccurate application response, without any indication that the response was made with an intent to deceive or that New York Life would not have issued the policy if an accurate response had been made, was sufficient to reflect a legitimate dispute, New York Life admits in the letter that it at least owed the amount of the paid premiums. However, it failed to tender that amount until at least January 30, 2014, which is over one hundred days after the date of the letter, and there is no indication that the

12

tender was made unconditionally. Therefore, the trial court was not manifestly erroneous in concluding that New York Life arbitrarily and capriciously breached its duty under La.R.S. 22:1973(B)(5).

New York Life also asserts on appeal that the penalties awarded under La.R.S. 22:1973 should have been limited to $5,000 because Michael failed to prove that he suffered damages. We agree.

Michael's petition does not allege that he suffered damages as a result of New York Life's breach of La.R.S. 22:1973, and there was no testimony or other evidence presented at the hearing suggesting that he suffered any actual damages. The trial court did not award Michael with any damages, but rather awarded $20,000 in penalties as prayed for by Michael's counsel.

Louisiana Revised Statute 22:1973(C) states:

In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.

The Louisiana Supreme Court has recognized that proof of actual damages is not a prerequisite to the recovery of penalties. *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 03-360 (La.12/3/03), 860 So.2d 1112. However,

The amount of penalties to be awarded is not . . . based upon the amount of the damages claimed . . . but the amount of damages sustained by the breach. *If there are no damages proven as a result of the breach itself, then the maximum amount that can be awarded is $5,000.00 in penalties*.

*Hall v. State Farm Mut. Auto. Ins. Co.*, 94-867, p. 7 (La.App. 3 Cir. 5/31/95), 658 So.2d 204, 208 (emphasis in original removed, our emphasis added). *See also, Gilpin v. State Farm Mutual Automobile Insurance Company*, 99-36 (La.App. 5 Cir. 5/19/99), 735 So.2d 921.

13

Because the trial court did not award Michael any damages from New York Life's breach of La.R.S. 22:1973, it was error for the trial court to award more than $5,000 in penalties.

**Denial of Motion for New Trial:**

New York Life submits that the trial court erred by not granting its Motion for New Trial as to Michael's claims for the insurance proceeds and penalties under La.R.S. 22:1973.

As we set forth in *Smith v. Alliance Compressors*, 05-855, pp. 6-7 (La.App. 3 Cir. 2/1/06), 922 So.2d 674, 678-679:

> Generally, new trials are granted in the interest of justice and are largely left to the discretion of the trial judge. *Succession of Robinson*, 186 La. 389, 172 So. 429 (1937). Trial courts are vested with the power to grant new trials on either discretionary or peremptory grounds. La.Code Civ.P. arts. 1972, 1973. There are three peremptory grounds that may serve as the basis for granting a new trial:
>
> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> > (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
> >
> > (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
> >
> > (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
>
> La.Code Civ.P. art. 1972. The discretionary grounds for granting a new trial are set forth in La.Code Civ.P. art. 1973, which states that a new trial may be granted at the discretion of the judge ". . . in any case if there is good ground therefor, except as otherwise provided by law." This has been interpreted to mean that "[w]hen the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered." *Lamb v. Lamb*, 430 So.2d 51, 53 (La.1983) (citations omitted).

Appellate review of the grant or denial of a motion for new trial under La.Code Civ.P. arts. 1972 and 1973 is governed by the abuse of discretion standard, which prohibits this court from reversing the actions of a trial court unless an abuse of discretion can be demonstrated. *Davis v. Coregis*, 2000–475 (La.App. 3 Cir. 12/27/00), 789 So.2d 7, *writ denied*, 2001–292 (La. 3/30/2001), 788 So.2d 1192. The supreme court has also held, however, that appellate courts should not hesitate to reverse trial court judgments upon review of rulings on motions for new trial, if allowing the lower court judgment to stand would serve "to permit technical pleading rules to triumph over actual justice." *Lamb* [*v. Lamb*,] 430 So.2d [51], 54 [(La.1983)].

The only peremptory ground for new trial under La.Code. Civ.P. art. 1972 that has been asserted is that the default judgment was clearly contrary to the law and evidence. However, as noted above, the trial court's findings that Michael was entitled to the life insurance policy proceeds and that New York Life breached its duty under La.R.S. 22:1973 were reasonably supported by the record. While the amount of penalties awarded under La.R.S. 22:1973 should have been limited to $5,000, we can adequately resolve this issue on appeal without remanding the matter for a new trial.

As to the discretionary grounds for new trial under La.Code. Civ.P. art. 1973 in the context of a default judgment, the Louisiana Supreme Court stated in *Thibodeaux v. Burton*, 538 So.2d 1001, 1005 (La.1989):

> "The trial judge's ruling is subject to review and is not final, and where an injustice is done and substantial rights are lost through mere technicalities, it is our duty to interfere. Such arbitrary and harsh rulings prolong litigation and do not end it, as is shown by the cases themselves." [*Hardy v. Kidder*, 292 So.2d 575,] 578 [(La.1974)]. This court is especially careful to review denials of a new trial in cases of default judgments. "With respect to cases, such as the one at bar, wherein a timely motion for a new trial is denied after the proper confirmation of a default judgment, this court has been particularly cautious in examining the circumstances underlying the judgment due to the general policy consideration, weighing in the defendant['s] favor, that every litigant should be allowed his day in court." *Lamb v. Lamb*, 430 So.2d 51, 53 (La.1983).

15

In its brief to this Court, New York Life refers to documents attached to its memorandum in support of its motion for new trial in support of its argument that a new trial should have been granted. However, at the hearing on New York Life's motion, counsel presented argument only, and no documents were admitted into evidence. "Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal." *Denoux v. Vessel Mgmt. Services, Inc.*, 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88. Therefore, we cannot consider any of these documents in our review.

At the hearing on New York Life's motion, counsel argued that a new trial should be granted because Michael misrepresented William's cause of death, omitted details of the extent of William's drug abuse treatment in October 2004, misrepresented that New York Life had failed to respond until the October 14, 2013 letter, and misrepresented that New York Life had not responded to Michael's former counsel with requested medical records.

New York Life failed to prove any of its allegations in connection with its Motion for New Trial, and, even if it had, the trial court would not have abused its discretion in denying the motion. There was no indication of any evidence showing that William's inaccurate response was intentionally made to deceive New York Life or that New York Life would not have issued the policy if the response had been accurate. While New York Life focuses on the fact that Michael's counsel did not specifically indicate to the trial court that the death certificate indicated marijuana use as contributing cause of death, as noted above, William's cause of death is immaterial to the analysis. Moreover, the complete certified death certificate was admitted into evidence and considered by the trial court.

16

In addition, New York Life incorrectly suggests that its duty under La.R.S. 22:1973(B)(5) requires only that it communicate with the claimant. However, whether or not New York Life communicated to Michael or his former counsel before or after the October 14, 2013 letter does not affect whether it satisfied its duty under La.R.S. 22:1973(B)(5) under the instant facts. New York Life admitted in connection with that letter that it at least owed the amount of the premiums paid, yet did not attempt to tender that amount until January 30, 2014, which is in breach of its duty under La.R.S. 22:1973(B)(5).

**Increase in Damages and Penalties On Motion for New Trial:**

In its final assignment of error, New York Life contends that the trial court erred in increasing its initial award under La.R.S. 23:1973 from $20,000 in penalties to $100,000 in damages and $200,000 in penalties, in connection with the denial of New York Life's motion for new trial. We agree.

Because the trial court denied New York Life's motion for new trial as to its award under La.R.S. 23:1973, and Michael did not timely seek, or was otherwise granted, a new trial on the amount awarded under La.R.S. 23:1973, the original judgment was final and not subject to substantive amendment by the trial court. La.Code Civ. P. art. 1951. Therefore, the trial court erred in increasing the amount initially awarded under La.R.S. 23:1973.

<u>CONCLUSION</u>

For the reasons set forth above, we affirm the denial of New York Life's motion for new trial. We further affirm the trial court's judgment against New York Life awarding Michael Burley with life insurance policy proceeds in the amount of $200,000, and we decrease the amount awarded under La.R.S. 23:1973

to $5,000 in penalties.  Costs of this appeal are assessed equally between the parties.

**AMENDED AND AFFIRMED.**