STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-693

DEXTON BRYANT

VERSUS

XTREME MACHINES, LLC

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 66,670
HONORABLE STEPHEN B. BEASLEY, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

H. Dean Lucius, Jr.
Kirby D. Kelly
Law Office of Kirby D. Kelly
515 Spring Street
Shreveport, Louisiana 71101
(318) 459-1885
Counsel for Plaintiff/Appellee:
    Dexton Bryant

**Joseph J. Valencino, III**
**Burglass & Tankersley, LLC**
**5213 Airline Drive**
**Metairie, Louisiana  70001**
**(504) 836-0416**
**Counsel for Defendant/Appellant:**
      **Xtreme Machines, LLC**

**KEATY, Judge.**

Xtreme Machines, LLC appeals a default judgment rendered against it and in favor of Dexton Bryant. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 13, 2015, Bryant filed a Petition for Personal Injuries against Xtreme, alleging that he was injured on April 13, 2014, when the front left tire of his 2007 GMC pickup truck "came off causing the vehicle to leave the roadway in a curve, striking a group of pine trees." According to the petition, Xtreme had installed a lift kit on Bryant's truck at an earlier date and had not made him "aware that the shearing off of the lug bolts had taken place making it a dangerous situation" to him and his passengers. Bryant obtained a preliminary default against Xtreme on September 15, 2015. At an April 19, 2016 confirmation of default hearing, Bryant testified and presented documentary evidence in support of his claims for damages. The trial court signed a judgment of default on May 9, 2016, in favor of Bryant and against Xtreme awarding Bryant $11,857.50 in medical expenses; $7,900.00 in property damage (for the lift kit, tires, and wheels); and $50,000.00 in general damages (pain and suffering/bodily injury). Xtreme filed a motion for devolutive appeal.

## ASSIGNMENTS OF ERROR

Xtreme asserts the following assignments of error on appeal:

> 1) The record does not reasonably support that Bryant established a prima facie case of negligence against Xtreme Machines. The trial court erred in admitting evidence which lacked sufficient facts to establish the required negligence elements.

> 2) Assuming, for the sake of argument, that Bryant's medical records were competent evidence, they do not support a $50,000 general damages award. $50,000 is excessive and the trial court erred in awarding that amount.

# DISCUSSION

## *Standard of Review*

In reviewing default judgments, appellate courts are restricted to determining the sufficiency of the evidence offered in support of judgment. Although there is a presumption that the evidence presented supports a default judgment, this presumption does not attach when the record of the confirmation hearing is before the appellate court. In such a case, the reviewing court is able to determine from the record whether the evidence upon which the judgment is based was sufficient and competent. . . . However, the trial court's conclusion concerning the evidence's sufficiency presents a factual issue which the manifest error rule governs. The manifest error standard of review obligates appellate courts to give great deference to the trial court's findings of fact. We will not reverse factual determinations, absent a finding of manifest error.

*Bordelon v. Sayer*, 01-717, p. 3 (La.App. 3 Cir. 3/13/02), 811 So.2d 1232, 1235,

(citations omitted), *writ denied*, 02-1009 (La. 6/21/02), 819 So.2d 340.

## *General Law Concerning Default Judgments*

This court recently discussed default judgments in *Burley v. New York Life*

*Insurance Co.*, 15-263, p. 4 (La.App. 3 Cir. 11/25/15), 179 So.3d 922, 928, where

we noted:

Louisiana Code of Civil Procedure Article 1701(A) allows a judgment of default to be entered against a defendant who fails to answer within the time prescribed by law. Confirmation of a default judgment under La.Code Civ.P. art. 1702(A) requires "proof of the demand that is sufficient to establish a prima facie case."

According to La.Code Civ.P. art. 1702(B)(2):

When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.

In addition, "[w]hen the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony." La.Code Civ.P. art. 1702(D).

> For a plaintiff to obtain a default judgment, he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits.

*Burley*, 179 So.3d at 928 (quoting *Thibodeaux v. Burton,* 538 So.2d 1001, 1004 (La.1989) (citations omitted)).

## *Assignment of Error Number One*

Xtreme contends that the trial court erred in admitting evidence lacking sufficient facts to establish its negligence and that Bryant failed to establish a prima facie case of negligence against it. Bryant counters that his testimony coupled with the evidence he presented at the confirmation hearing, which included certified medical records documenting his injuries, supplied the trial court with evidence sufficient to support the default judgment in his favor.

At the start of the April 19, 2016 confirmation of default hearing, Bryant's counsel offered the following exhibits into evidence: 1) a copy of the accident report completed by the Sabine Sheriff's Office on April 13, 2014; 2) a handwritten note dated February 14, 2014; 3) nineteen photographs; 4) a Notice of Service issued by the Clerk of Court of April 22, 2015, showing that personal/domiciliary service was made on Xtreme through Scott Dowden on April 20, 2015; and 5) medical records.

At the confirmation hearing, Bryant testified that he contacted Xtreme in 2014 about putting a lift kit and tires onto his truck. He explained that a lift kit

3

"lifts your truck higher so you can run bigger tires and wheels." In conjunction with that testimony, Bryant's attorney referred to the handwritten note offered into evidence. The note was dated February 14, 2014, and the words "Xtreme Machines" appeared to the right of the date. The remainder of the note said:

> For Dexter Bryant
>
> Lift, Tires & Wheels
> Toyo Open Country     $8400
>
> w/ Fuel Tires     $7,900

A signature appeared at the bottom of the note. According to Bryant's attorney, the note was a quote from Xtreme's manager telling Bryant how much Xtreme would charge for the work, depending on which tires he chose. Bryant testified that he had the work done at a cost of "around $8,000.00." Bryant stated that he was told that an invoice would be left in the truck after the work was completed, but no invoice was in the truck when he picked it up from Xtreme. In addition, Bryant confirmed that he received no warnings from Xtreme or any indication that his truck had been damaged. Bryant stated that after the lift kit was installed, his truck "shook really bad" and he started noticing "very bad wearing" on his tire. He explained that he was driving home after church on April 13, 2014, when his truck began shaking "differently that it normally shaked [*sic*]." (Alteration in original.) Bryant stated:

> And the next thing I remember, my truck, like, slammed down. Well, the tire fell off then my backend came up and my truck was standing straight up, almost, and it shot me into the ditch[,] and I hit some trees[,] and the next thing I remember is waking up under the dash.

Bryant stated that an officer from the sheriff's department came to the scene of the accident and conducted an investigation. When questioned by his attorney as to whether the police told him why his vehicle crashed, Bryant answered, "Yes. They

told me that studs had been broken previously due to the work and was welded back on." He explained that as a result, the tires leaned inward and "weared off." Bryant stated the police told him that when the bolts broke, "[t]hey all sheared off and there was some that was torqued too much sheared off and caused my tire to come off." In answering a question posed to him by his attorney as to whether the police told him that they had seen this type of accident before, Bryant answered, "Yes, many of times." In response to a follow-up question from his attorney as to whether the police had "seen it from this particular company, Bryant replied, "Yes, they did."

Bryant stated that he went by ambulance to the hospital in Many, Louisiana. He was told that he had a concussion of the front and back sides of his head, but that he should be "allright [sic] and could go home." Because he "wasn't feeling very good," the next day, Bryant went to Willis-Knighton Medical Center where he was told that he had "a possible brain bleed and very bad concussions – and my lower back." According to Bryant, he was never the same after the accident, and he has constant headaches and back pain. Bryant stated that he was told that he had "lower back spasms," that his back was "messed up tremendously," and that he might need to be evaluated for surgery in the future. Bryant testified that he was told that his concussions were like those "that football players get" and that "it could be a long time 'til [he] stop[ped] having headaches and memory loss."

In the accident report, Nathan Firesheets, the officer who investigated the accident, noted that "[u]pon looking at the front left axle the lug bolt studs were sheared off" and "[t]he inner side of the tires were heavy woring [sic] [and] no tread was left." He listed the truck's tire failure as the most harmful event contributing to the accident. Officer Firesheets estimated that the truck "traveled

55 feet" off the highway before stopping after striking "a group of pine trees." He documented that the front and passenger side of Bryant's truck were heavily damaged, but the airbags did not deploy. Officer Firesheets further noted that although "Bryant had his seat belt on," he "hit his head on the steering wheel" and was "transported to Sabine Medical Center via Med Express [ambulance]." He classified Bryant's injuries as a "C," meaning they were "non-incapacitating/moderate." Finally, he noted that Bryant's vehicle was towed from the scene of the accident.

According to the certified medical records from Sabine Medical Center, when Bryant presented there on April 13, 2014, he complained of injuries to his head, neck, and middle back. He underwent an EKG and a chest x-ray, and he received CT scans of his abdomen, head, and pelvis. The examining physician diagnosed Bryant with multiple sprains and contusions and discharged him with instructions to return to the emergency room if his symptoms worsened. He was also told to follow up the next day with Dr. Husam Sukerek, his primary-care physician. He was given a form stating that he would have to be cleared for work by Dr. Sukerak. Bryant was seen by Dr. Sukerek on April 14, 2014. Notes from that visit indicate that Dr. Sukerek diagnosed Bryant with a concussion, headache, abrasions to his forehead and left leg, muscle spasms in his left leg, thoracic muscle strain, and contusions to his chest and upper right arm. Bryant was prescribed pain medication and a muscle relaxer. When Bryant returned to Dr. Sukerek's office on April 29, 2014, his headache and concussion were improved, his forehead and left leg abrasions were resolving, and his chest and right arm contusions had resolved, but his thoracic muscle strain was getting worse and he was having lumbar muscle spasms. After examining Bryant on May 15, 2014,

6

Dr. Sukerek signed a "Return to Work Status Form" releasing him to full duty, full-time work as of May 22, 2014. Certified medical records from Willis-Knighton indicate that Bryant sought treatment there just before noon on April 15, 2014. At the time, Bryant's mother reported that he had experienced memory loss and confusion since the motor vehicle accident that occurred several days prior. After obtaining another CT scan of the brain, the examining physician diagnosed Bryant with a concussion without loss of consciousness, a closed-head injury, acute low-back pain, and post-concussion syndrome.

At the close of the confirmation hearing, Bryant's attorney asked that judgment be rendered awarding Bryant medical special damages in the amount of $11,857.50; property damages of $7,900.00, which represented the amount Xtreme charged Bryant for the lift kit;[1] and $50,000.00 for pain and suffering. As previously mentioned, a judgment of default was signed on May 9, 2016, in favor of Bryant and against Xtreme awarding him judgment in the amounts prayed for.

In *Narcisse v. Gray*, 12-190 (La.App. 3 Cir. 6/6/12) (unpublished opinion), the trial court rendered a default judgment in favor of a plaintiff who was injured in a motor vehicle accident. The record revealed that the plaintiff testified at the confirmation of default hearing as did the police officer who investigated the accident. In addition, the plaintiff submitted as evidence the police report, wherein the officer "noted very minor damage to the back of the vehicle and noted that no injuries were reported at the scene." *Id.* at p. 1. Medical bills were also submitted on the plaintiff's behalf. The trial court orally rendered judgment in plaintiff's favor in the amount of his medical bills. Several months later, the plaintiff filed a motion to supplement the record with additional medical evidence. The trial court

---

[1] According to his attorney, insurance paid for the damages to Bryant's vehicle.

allowed the supplemental evidence and granted a default judgment awarding the plaintiff an increased amount of medical damages. On appeal, this court affirmed, finding that the plaintiff "presented sufficient evidence to establish that default judgment was proper" against the motorist who rear-ended the vehicle in which the plaintiff was a passenger. *Id.* at p. 4. We noted that "[t]he medical evidence consisted of only a few pages of medical bills, without narratives or even a nurse's triage or admitting report to document the nature of the patient's complaints in the emergency room," and that the trial court "awarded the cost of x-rays, even though there were no reports of the results of the x-rays." *Id.*

In *Howery v. Linton*, 452 So.2d 295 (La.App. 2 Cir. 1984), a default judgment was rendered in favor of the plaintiff. In affirming, the second circuit noted:

> Plaintiff testified that she received a bill from the ambulance service for $140 and a bill from the hospital for x-rays for $88. The trial judge allowed these bills into evidence and allowed plaintiff $228 in special damages. Defendant complains that special damages should not have been allowed because the bills were inadmissible hearsay. We find no error in the allowance of special damages or in the admissibility of the bills.
>
> Plaintiff established that it was apparently necessary for her to be taken by ambulance to a hospital. She established that she was x-rayed at the hospital and was released on the date of the incident in the bar. The expenses she said she incurred are not unreasonable in amount. The fact that she received the bills in the amount shown is not inadmissible hearsay, and to this extent, the bills were admissible, even though they might not have been admissible to independently prove that services were necessary or that the expenses incurred by her were reasonable.

*Id.* at 296.

The first circuit held in *Tucker v. Howes*, 413 So.2d 585 (La.App. 1 Cir. 1982), that when the trial court in confirming a default judgment makes a

credibility determination, such determination should not be overturned on appeal unless it is manifestly erroneous.

After a careful review of the testimony and evidence presented at the confirmation of default hearing, we cannot say that the trial court committed manifest error in finding that Bryant was injured and suffered general and special damages as a result of Xtreme's negligence such that default judgment was properly rendered in his favor. Xtreme's first assignment of error lacks merit.

## *Assignment of Error Number Two*

Xtreme has not challenged the trial court's award of special damages to Bryant in the amount of $11,857.50 or its award of $7,900.00 in property damages. It contends, however, that the $50,000.00 in general damages awarded to Bryant is excessive and not supported by the evidence given that he treated for only two months after the accident and that the CT scans performed in the emergency room immediately following the accident were all normal. It cites two decisions rendered by the second circuit in support of its contention that Bryant's general damage award should be reduced to between $20,000.00 and $25,000.00. *See Hughes v. Scottsdale Ins. Co.*, 35,043 (La.App. 2 Cir. 8/22/01), 793 So.2d 537 (on appeal, the jury's $5,000.00 general damage award was raised to $20,000.00, the lowest amount which would adequately compensate plaintiff involved in a motor vehicle accident who sustained soft-tissue injuries, headaches, and post-concussion syndrome with attendant memory loss and impairment that persisted five years after the accident); *Johnston v. Shelton*, 42,103 (La.App. 2 Cir. 6/27/07), 961 So.2d 582 (appellate court found that $25,000.00 general damage award was not an abuse of discretion where plaintiff injured in a motor vehicle accident suffered post-

concussion syndrome lasting one year post accident and an aggravation of pre-existing musculoskeletal pain and depression).

Bryant counters that the amount of general damages awarded to him by the trial court was not excessive given his documented medical expenses of $11,857.50 and his testimony that he began having migraines after the accident and was still suffering from headaches and back pain at the confirmation hearing approximately two years after the accident. He likens his injuries to those suffered by the plaintiff in *Lenard v. State Farm Mutual Automobile Insurance Co.*, 39,580 (La.App. 2 Cir. 4/20/05), 900 So.2d 322. The plaintiff in *Lenard* was transported by ambulance to the hospital following a motor vehicle accident where he complained of head, neck, and low-back pain. He began having migraines after the accident, which continued for three years post-accident. In addition, at trial five years after the accident, his neck and back pain were still present and affecting his activities and sleep. The second circuit affirmed the trial court's $50,000.00 general damage award to the plaintiff. The plaintiff's medical bills in *Lenard* totaled $15,909.58. We also note that x-rays taken at the hospital immediately after the accident, as well as an x-ray taken two months after the accident revealed only degenerative changes to the *Lenard* plaintiff's spine and no fractures or acute injury.

In *Smith v. Clement*, 01-87, p. 7 (La.App. 3 Cir. 10/3/01), 797 So.2d 151, 157, *writs denied,* 01-2878, 01-2982 (La. 1/25/02), 807 So.2d 249, 843, we noted:

> An award of damages is a determination of fact which is entitled to great deference on review. There must be an abuse of discretion by the trial court before the award can be disturbed on appeal. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976). As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." *Youn v.*

*Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993), *writ denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

In the instant case, the accident report shows that Bryant complained of and exhibited injuries to his head immediately after the accident. The invoice from the ambulance indicates that a C-collar was placed around Bryant's neck and that he was placed on a long spine board for transportation to the hospital. At the hospital, he was diagnosed with multiple sprains and contusions. The next day, Bryant sought treatment with his primary-care physician, Dr. Sukerek, and he was found to be suffering from a concussion, headache, and muscle spasms and strain. Two days after the accident, Bryant's continued pain in his low back and right arm coupled with his new symptoms of memory loss and confusion led to his seeking additional treatment at Willis-Knighton. At that time, the examining physician diagnosed Bryant with concussion and post-concussion syndrome, along with acute low back pain. At the confirmation hearing, Bryant testified that he continued to suffer from constant headaches and back pain. In confirming a default judgment in Bryant's favor and in awarding him $50,000.00 in general damages, the trial court found Bryant's testimony to be credible. We find no manifest error in that finding. *See Tucker*, 413 So.2d 585. Moreover, in light of the cases cited by both Xtreme and Bryant, we find no abuse of discretion in the amount of general damages awarded by the trial court. Thus, there is no merit to Xtreme's second assignment of error.

## DECREE

For the foregoing reasons, the default judgment rendered in favor of Dexton Bryant and against Xtreme Machines, LLC, is affirmed. Costs of this appeal are assessed against Xtreme Machines, LLC.

11

**AFFIRMED**.